BOWERMAN, TRUSTEE ET AL. *v.* THE FIRST MERCHANTS NATIONAL BANK OF LAFAYETTE.

[No. 26,688. Filed March 31, 1937.]

*Stuart, Stuart & DeVol,* for appellants.

*Randolph & Randolph, Harry P. Schultz, A. K. Sills* and *Joseph A. Andre,* for appellees.

FANSLER, J.—This is an appeal from an interlocutory order granting an injunction.

The evidence consists of verified pleadings and affidavits.

In November, 1931, the Farmers & Traders State Bank of Lafayette, being in financial difficulties, was taken over by the remaining banks in the community under an agreement, by the terms of which the participating banks assumed and agreed to pay all of its liabilities, and by which all of its assets were assigned and transferred to the participating banks as security, to be liquidated and the proceeds used for their reimbursement. It was also agreed that the stockholders of the assigning bank should be liable to the participating banks to the extent of their statutory liability for assessment in the event the assets assigned did not liquidate for a sufficient amount to reimburse the participating banks and pay the expenses of administering and liquidating the assets. The contract provided for a committee, consisting of a representative of each participating bank, with full power to designate a trustee or trustees to manage the assets of the assigning bank, and that the committee have power to direct the action of the trustees with respect to the sale, collection, or other disposition of the assets, the deposit of funds which might come into the trustees' hands, and all matters pertaining to the administration of the trust. It was provided that the assigning bank should issue cashiers' checks or certificates, which would be honored by any of the participating banks to which they were presented; that, if the assets and the stockholders' liability of the assigning bank were not sufficient to reimburse the participating banks, the loss would be borne among them, one-third in the proportion that the capital and surplus of each bore to the surplus and capital of all, one-third in the proportion that the total deposits of each bore to the total deposits of all, and one-third upon the basis of the proportion of cashiers' certificates and checks of the

assigning bank that each might pay or accept as the basis of a deposit account. In the event the assets liquidated for more than enough to reimburse the participants and pay the expenses of the trust, the surplus was to be returned to the stockholders of the assigning bank. There were two supplemental contracts, which are of no concern in the present action.

Appellee, one of the participating banks, brought this action against appellants, trustees under the contract, alleging that the trustees have in their hands, as proceeds of collection of assets of the trust, the sum of $10,000 in cash; that, under the terms of the agreement, the participating banks were entitled to have assets distributed to them in proportion to the amount of deficit each had agreed to assume; that the participating banks had honored cashiers' checks and certificates of the assigning bank, either by payment in cash or by opening and crediting of accounts, in the sum of $1,782,329.97, and that plaintiff's proportionate share was 30.412 per cent., but that it had honored and paid 37.858 per cent., which was more than its proportionate share; that accounts, notes, mortgages, and other assets and property of the Farmers & Traders State Bank had been distributed by the trustees among the participating banks in exchange for and upon surrender of cashiers' checks of equal amount; that, from time to time, some of the notes and mortgages were paid in cash, and the cash proceeds distributed; that this distribution had been inequitable and not in proportion to the liabilities which had been assumed by each bank, and that the assets so distributed to the plaintiff were less than its proportionate share; that the trustees are permitting notes, mortgages, and accounts belonging to the trust to remain in the possession of participating banks which are insolvent and in liquidation; and that the distribution of

assets was not made in accordance with the provisions of the contract.

By the supplemental complaint, it is alleged that an additional $7,000 in cash has come into the hands of the trustees since the filing of the complaint; that on January 3, 1936, the Department of Financial Institutions of Indiana gave notice that it would, and that it did assume to, take possession of the business and property of the Farmers & Traders State Bank, and that it is endeavoring to secure possession and control of the property and assets of the trust created by the assignment; that the participating banks and trustees will, unless restrained, pay over to the Department of Financial Institutions a portion of the trust moneys, in violation of the trust agreement; that, by reason of the inequitable distribution of assets, it requires the entire amount of money held by the trustees, and still further additional funds, to be paid to plaintiff in order to equalize the distributions and give plaintiff its proportionate share under the agreement. In addition to prayers for restraining orders, which were granted, and the temporary injunction appealed from, there was prayer that, upon final hearing, the appellants be enjoined from paying any portion of the money, securities, property, or assets to any other person than the plaintiff, and that the trustee Bowerman "be ordered and directed" to pay over to the plaintiff all future cash proceeds of trust assets, coming into the hands of the trustee, in such amount as will give plaintiff its proportionate share of assets under the trust agreement; that the trustee Bowerman be "ordered and directed" to repossess those notes, mortgages, and assets which are now held by parties to the trust agreement in amounts in excess of their proportionate share, and to deliver and distribute such assets to the plaintiff in such an amount

as shall give to plaintiff its proportionate share. The complaint is verified.

There is in evidence an affidavit of plaintiff's cashier, which, omitting the formal parts, is as follows: "That no interest is paid to or received by the plaintiff on the cashier's checks held by said plaintiff as described in the second paragraph of complaint filed in this case; that interest is paid to the respective banks on the accounts, notes, mortgages and other trust assets held by said respective participating banks; that said interest is the income and revenue of trust property; that said interest is itself trust property and is retained by the respective banks receiving the same; that the plaintiff is now deficient, and will continue to be deficient, in its proper proportion of the interest to which it is entitled so long as the distribution of the notes, mortgages, accounts and assets of said trust fund remains unequal, out of proportion and inequitable as alleged in the second paragraph of complaint filed in this cause." And a further affidavit that the committee representing the banks involved had adopted a resolution directing the trustee Bowerman "to pay to the Department of Financial Institutions or its authorized representative, from the monies of said trust, the sum of $15,000.00, under Sec. 62 of the Indiana Financial Institutions Act to provide, to the extent of such payment, for the unpaid and unclaimed deposit liabilities of the Farmers & Traders State Bank." There was a provision that the payment should not be made unless the restraining orders against the trustee should be dissolved or modified to permit the payment. There was an affidavit by appellant Bowerman that there remains unpaid and unsatisfied certain deposit liability of the Farmers & Traders State Bank to its depositors, assumed by the participating banks under their agreement, amounting to $33,586.67. It appears by his affidavit, also, that on

the 2nd day of November, 1934, there was on deposit to the account of the trustee, in the appellee bank, the sum of $13,547.72; that on said date the trustee was directed by the committee, by unanimous vote, to disburse and pay said money in the following manner: $7,000 to the appellee bank, $3,000 to the Department of Financial Institutions, in charge of liquidation of the Tippecanoe Loan & Trust Company, and $2,812.99 for taxes; that appellee refused payment of a check on said fund, and appropriated all of the fund to its own use.

The Department of Financial Institutions, in charge of the liquidation of the Farmers & Traders State Bank, filed a verified intervening petition, which, under the stipulation, became part of the evidence. It alleges that there is unpaid indebtedness to depositors of $34,393.09.

The various pleadings and affidavits which are in evidence contain many conclusions of law and fact, but, in so far as they state facts, there is no conflict in the evidence.

In respect to the distribution of the assets of the Farmers & Traders State Bank to the various parties, the contract is entirely silent. By the terms of the contract, stockholders in the assigning bank guaranteed payment of the instruments, which largely made up its assets, to the extent of their liability for assessment upon their stock. The plaintiff's contention that, under the terms of the contract, the liability to depositors of the Farmers & Traders State Bank was to be taken over and assumed by the participating banks in a fixed proportion, or according to a certain percentage, is not borne out by the language of the contract. It would seem to have been the understanding of the participating banks that each would pay the obligations of the Farmers & Traders State Bank that were presented to it, either in cash or by a deposit credit. An advantage seems to have been seen (probably the opportunity of

procuring new accounts) in cashing the cashiers' certificates or checks, since it is provided in the contract that one-third of the loss, if any occurred, was to be borne in proportion to the amount of such credits deposited in each participating bank.

The substance of the plaintiff's cause of action, and the basis of its dissatisfaction with the administration of the trust, is summarized in the following allegation of the complaint: "That as a result of the distribution of trust moneys as above alleged, the amount of liability, or cashiers' checks, which is still borne or held by each respective bank, unsecured by distribution to it of assets or moneys, and the amount of liability or cashiers' checks which, under the proportions and percentages of said agreements herein should at this time be borne or held by each respective bank, unsecured by distribution to it of assets or moneys; and the amount of excess trust assets held by each respective bank over and above its proportionate share under the percentages of said agreements; and the amount of deficiency of assets under its proportionate share suffered by each respective bank are all at the present time, as shown by the figures of the defendant Trustees herein, as follows:" This is followed by a table indicating that, in the distribution, the plaintiff and one other bank have received less than what is assumed to be their proportionate share, and the other participating banks have received more than their proportionate share, presumably of "trust assets and trust moneys." It seems clear, however, from the affidavit of appellee's cashier, that the unliquidated assets other than cash, which have been distributed to the participating banks, are held for the trust, and not as the property of the banks. It is stated in the affidavit that the interest on those securities is trust funds and the property of the trust, and, if this is true, such assets are security for any amounts

due to appellee and all of the participating banks, notwithstanding they may be held by one participating bank. The trustees and the committee act for all, and have no power to alienate assets of the trust or segregate them as security for amounts due one or more of the participating banks as against the others. All of the banks have knowledge of the agreement, and of the authority of the trust, and the ownership of the assets, and any assets which they have taken were taken with full knowledge of the rights of all the parties. If any of the participating banks has purchased assets without recourse on the trust, or upon the assigning bank, the situation is different, and it cannot be doubted that the trustees, upon the advice of the committee, would have power to accomplish liquidation by an outright sale, made in good faith, and accept compensation by credit upon any amounts that might be due the purchasing bank by reason of having cashed cashiers' checks of the assigning bank, so long as the purchasing bank was not credited with more than the amount due, which, in case of ultimate deficiency or loss, cannot be definitely determined under the formula prescribed until the amount of the loss is definitely known.

Upon this appeal, the final merits of the controversy cannot be considered. The court is not concerned with the sufficiency of the complaint as against demurrer. The only question presented is whether or not the facts were sufficient to justify the trial court in issuing an injunction to maintain the status quo pending a final determination of the rights of the parties upon a full hearing.

There is no express provision in the contract for the distribution of assets to the participating banks. Under the contract, the trustees might have held all assets until liquidated and converted into cash, so that distribution to the participants might

have been in cash only. Evidently the trustees and the committee have availed themselves of the facilities of the participating banks as collectors. Nothing in the contract forbids it, nor is there any provision requiring that distribution of assets for collection shall be proportionate. There is no provision in the contract concerning interest, but, since the interest collected is part of the trust fund, so much of it as may ultimately belong to the participating banks must be ultimately distributed upon an equitable basis. Advantage may have been seen in distributing certain assets to particular banks for collection. It is not alleged that all of the assets distributed are worth their face, and that from the standpoint of value the assets held by each bank are not proportionate, nor is there any formula by which the ultimate proportion to which each bank is entitled can be definitely ascertained until it is determined whether or not there will be a loss, and the amount of the loss. There is no allegation of fraud or bad faith, or other inequity or illegality, in the distribution, except only that it is disproportionate. But there is nothing in the contract that requires that it be proportionate, except upon final distribution. It appears from the complaint that the distribution was at one time much more disproportionate and disadvantageous to appellee, if there is disadvantage in it, but that as distribution proceeded the disproportion has substantially decreased. Why it was so highly disproportionate in the first instance does not appear. It is possible that assets were distributed before the amount of the liabilities accepted by the participating banks was known, but the apparent tendency to correct the discrepancy tends to indicate a disposition on the part of the trustees and the committee to deal equitably. How a court of equity can determine with exactitude what the proportionate distribution should be at this time, or before a final determination of the

value of the assets, is not suggested. It is alleged that assets will be assigned and delivered to participating banks that are insolvent, and that they cannot be recovered. If assets are delivered to such for collection, they could be required to account for any collections in excess of what might ultimately be determined to be due them, the same as solvent participators. If assets are sold and assigned outright to such in excess of their due, it would be a fraud upon the trust, of which all parties are charged with knowledge, and it cannot be doubted that there is a remedy.

It appears clearly, by the terms of the contract, that the sole consideration for the assignment of the assets was the agreement of the participating banks to pay the depositors of the assigning bank, and that the participating banks are entitled to retain only so much of the proceeds of the assets assigned as will be sufficient to pay the depositors and other creditors of the assigning bank and the expense of administering the trust. It is provided in the contract that, if the aggregate sum realized shall exceed the amount of liabilities assumed and the reasonable cost of liquidation, the excess proceeds from the liquidation shall belong to the stockholders of the Farmers & Traders State Bank. It was clearly contemplated that the depositors and creditors should first be paid by the participating banks, or out of the assets, and that reimbursement should follow as the assets were liquidated. Most of the depositors seem to have been paid upon presentation of their certificates or cashiers' checks, but more than $30,000 of deposit indebtedness has not been paid. It may be assumed that the depositors to whom this amount is due have not presented their claims for payment. The contract provides for a committee of representatives of the participating banks, and that the committee shall "have power, in accordance with the decision of a majority thereof,

to direct the action of the Trustee or Trustees with respect to any duties required of said Trustee or Trustees hereunder and with respect to the sale, collection or other disposition of the assets at any time in the hands of said Trustee or Trustees, the deposit of funds which may come into the hands of said Trustees and all matters pertaining to the administration of said trust by said Trustees for the benefit of said participating banks." This provision would seem to vest a certain discretion in the committee to direct the conduct of the trustees in the liquidation and distribution of assets. It is a primary duty of the participating banks, and their committee, and the trustees, under the contract, to see that the creditors and depositors are paid, and there is nothing in the contract upon which a participating bank can base a claim for reimbursement out of the funds in the hands of the committee or trustees while there are creditors unpaid and who can be paid with the funds. The fact, if it be a fact, that the distribution of assets to the participating banks has been inequitable, does not create a right to preference in favor of the participant who has been inequitably dealt with as against creditors, or as against the right of the assigning bank and its stockholders to have creditors paid. It may give rise to a right of preference in further distributions as against the other participants.

The creditors of the Farmers & Traders State Bank were not parties to the agreement by which its assets were assigned. Whether those that have not been paid, and have not demanded payment, are bound by the arrangement is not in question. It appears that the Department of Financial Institutions has taken over the liquidation of the bank under chapter 40 of the Acts of 1933 (Acts 1933, p. 176), and that liquidation proceedings are now pending in the Tippecanoe Circuit Court. The bank has unpaid depositors, and assets at

least to the extent of its contingent rights above referred to. Section 62 of the Depository Act (Acts 1933, ch. 40, p. 208) provides that if there are unknown creditors or depositors of a financial institution, which is taken over for liquidation by the Department of Financial Institutions, the department shall deposit the distributive portions of the property and assets distributable to such depositors or creditors with the clerk of the circuit or superior court, and that such deposit shall have the force and effect of payment; that the clerk shall distribute the portion so deposited upon proof being made by the claimant, and that, if any portion of the fund so deposited shall not be claimed within three years from the date of deposit, the remaining portion shall be distributed to the creditors or shareholders as the case may be. This statute furnishes a limitation of time for the holding of funds for creditors or depositors who have not made claims. The department, by its intervening petition, is asserting that all of the cash and securities in the hands of the trustees is the property of the Farmers & Traders State Bank, and that, under the laws of the state of Indiana, the Department of Financial Institutions is entitled to possession of such assets. The rights of the intervening petitioner have not been determined, nor is a determination material to the issue here.

The committee, in the exercise of its discretion, has determined upon and ordered payment by the method provided for by the statute. There may be some advantage to the participating banks in this method by reason of the reversionary provision, but it does not appear that setting aside this fund for the benefit of creditors that are unpaid invades any of the plaintiff's rights, or works any injustice or inequity. The plaintiff, by its contract, vested the management of the assets in a committee, and vested that committee

with discretion. The committee has exercised its discretion in determining to follow the statutory method of setting aside funds for the payment of the remaining depositors, and, in the absence of fraud or bad faith in this respect, and none is alleged or shown, equity will not interfere with the performance of the contract in the manner chosen by the committee. No basis appears for enjoining the trustees from carrying out the orders and directions of the committee for the payment of creditors in any reasonable manner which they in their discretion shall determine upon. That the trial court recognized the right and duty of the trustees to pay creditors is indicated by the modification of the original restraining order so as to permit the trustee Bowerman to pay "out of the funds now in his custody the proper claim of any depositor of the Farmers & Traders State Bank, who shall present such claim to said Trustee and shall make proof to the defendant trustee of the identity of such depositor and the validity of such claim. Payment may be made to such depositor in person or to his duly and legally authorized agent or representative."

The temporary injunction appealed from is as follows: "The Court, having heard the evidence on plaintiff's application for restraining order and injunction and having taken the matter under advisement and being now duly advised in the premises, finds and adjudges that a temporary restraining order and injunction should issue and that the defendants, Robert Houston, trustee, and Clifford Bowerman, trustee, be and they are hereby restrained and enjoined from paying out or distributing in any manner the cash trust funds in their hands or that may hereafter come into their hands as trustees or trustee, under and by virtue of the contract attached to plaintiff's complaint herein and marked 'Exhibit A,' until the final hearing and trial of the cause upon its merits; subject, however, to the payment of all

of the necessary and usual expenses of conducting and operating the trusteeship and also the payment of the deposit or deposits of any of the depositors of the Farmers & Traders State Bank, upon the presentation of such claim for deposit by such depositor."

It appears from the computation in the complaint that another and smaller bank, not a party to the action, has greater cause for complaint because of disproportionate distribution than appellee, and the restraining order would prevent distribution to this bank to bring it up to an equality with appellee. It is said in *Fowler Utilities Co.* v. *Gray* (1907), 168 Ind. 1, 6, 79 N. E. 897, 899, that: "When a party comes into equity it should be very plain that his claim is an equitable one. The application is in a measure addressed to the judicial discretion of the court. The court will not exercise its extraordinary power to restrain an apprehended injury resulting from a breach of contract, unless the petitioner is without adequate remedy at law, and the contract itself be free from doubt and not uncertain or vague in its terms or provisions." And in High on Injunctions (4th Ed.) §7, p. 11, it is said that: "And it is incumbent upon the party seeking relief by interlocutory injunction to show some clear legal or equitable rights, and a well grounded apprehension of immediate injury to those rights." And in section 8, p. 12, it is said that: "The writ of injunction, being largely a preventive remedy, will not ordinarily be granted where the parties are in dispute concerning their legal rights, until the right is established at law."

It is not the province of courts of equity to make or supplement private contracts. In so far as it appears, the parties to the contract in question were acting voluntarily and free from coercion or restraint. They were all banking institutions, presumably acquainted with the banking business and the matters of liquidation

which would be involved in the transaction entered into. They saw fit to leave the contract vague and uncertain as to the manner and method of liquidating assets, and made no provision at all concerning the right of the participating banks, or any of them, to hold assets and liquidate them. Discretion to direct the trustee or trustees, "with respect to any duties required of said Trustee or Trustees hereunder and with respect to the sale, collection or other disposition of the assets at any time in the hands of said Trustee or Trustees, the deposit of funds which may come into the hands of said Trustees and all matters pertaining to the administration of said trust," was by the contract vested in a committee composed of a representative of each participating bank. It is not alleged that any of the actions of the trustee complained of were taken other than at the direction of the committee, nor is it alleged that there was disagreement between the committee members. The contract seems to indicate control by a majority of the committee. There is no showing, or attempt to show, that the action of the committee in depositing the securities with the banks which hold them was indiscreet or not to the best interest of the trust. It is merely alleged that what appellee construes to be its proportionate share under a contract, which makes no provision whatever for intermediate disposition, was not deposited with it. Upon final hearing, the court could do nothing more than substitute its discretion for the discretion of the committee in the placing of assets in the hands of the various parties. But the appellee, by its contract, vested that discretion in the committee, and it cannot repudiate its contract. If there was any claim, or evidence, or showing of fraud or bad faith, it would be different. Nor does it appear, or is there anything to indicate, that appellee has not an adequate remedy at law. Funds or assets in the hands of the trustee, or the other participants, or of

receivers, or liquidating officers, of insolvent participants, are held for the account of all of the parties, and can be reached and made available for final distribution under the terms of the contract, and there is no allegation or showing of facts indicating that they may not be reached. If appellee was entitled to distribution upon some proportionate basis, it was more unjustly dealt with in the early stages of the contract, and its condition has been improving. There is no allegation of, and nothing to indicate, a change of policy, but the conduct of the trust seems to indicate that no injury to appellee is impending, or that there is any urgent necessity which demands interference by injunction. There is no allegation or evidence tending to show that the assets are insufficient to finally pay appellee's demands in full, both principal and interest. "Where the question involved is merely of a pecuniary nature, plaintiff will not be allowed an interlocutory injunction unless he can satisfy the court that there is a probability that his bill will not be dismissed upon the hearing." High on Injunctions (4th Ed.) §5, p. 9. There is no such showing. There is no showing that any of appellee's rights under the contract have been violated.

It does appear beyond controversy that appellee violated the contract by refusal to pay out funds, which it held on deposit to the credit of the trustee, in a manner directed by unanimous vote of the committee. If the committee or trustees have intentionally refrained from tentatively depositing funds or assets with appellee because of an apprehension that there might be a refusal to return them, if such a return were necessary in order to equalize the distribution, it cannot be said that they were not justified, in view of appellee's breach of the contract. One who has breached a contract is hardly in a position to seek protection in a

court of equity against measures which may have been taken as a protection against future breaches.

Judgment reversed, with instructions to dissolve the temporary injunction, and for further proceedings not inconsistent herewith.