**Samuel J. LICOCCI, Appellant-Plaintiff,**

**v.**

**CARDINAL ASSOCIATES, INC.,**
**Appellee-Defendant.**

**Gil PAPP, Appellant-Plaintiff,**

**v.**

**CARDINAL ASSOCIATES, INC.,**
**Appellee-Defendant.**

**No. 4–681A20.**

Court of Appeals of Indiana,
Fourth District.

March 17, 1982.
Rehearing Denied April 23, 1982.

2. *Davis v. Davis*, (1980) Ind.App., 413 N.E.2d 993, had not yet been decided at the time of the August 4, 1980, trial of this cause.

R. Eugene Johnson, Thomas J. Kimpel, Donald J. Fuchs, Merrill, Schroeder & Johnson, Evansville, for appellants-plaintiffs.

Charles L. Martin, Boonville, for appellee-defendant.

CONOVER, Judge.

Samuel J. Licocci and Gil Papp appeal from the Gibson Circuit Court's refusal to dissolve a preliminary injunction enforcing two of the three restrictions on competition in their employment contracts with Cardinal Associates, Inc. They contend the trial court abused its discretion in granting the injunction because the non-competition agreements were invalid and relief in equity was unjustified.

We affirm in part and reverse in part.

Licocci and Papp raise several specific issues for our consideration.

1. Does a reservation by an employer of the right to reject orders taken by its salesmen render an employment contract unen-

forceable for lack of mutuality of obligation?

2. May the trial court assist a party in the enforcement of a contract despite contentions the enforcing party breached the contract and conducted itself in an unjust and inequitable manner?

3. Were the non-competition agreements in Licocci's and Papp's contracts unreasonable?

4. May an employment contract be amended without additional consideration? and

5. Was the evidence presented sufficient to support a preliminary injunction?

## SUMMARY OF THE FACTS

Cardinal Associates sold products to educational, civic, business, recreational and religious organizations for resale as fund-raising projects. The corporation hired Licocci and Papp as commissioned salesmen to promote those products and to solicit orders.

On May 9, 1978, Licocci signed an employment contract for a one-year term beginning August 1, 1978. Among other things the contract provided that for 60 days after termination of employment, Licocci would neither compete with Cardinal within his assigned territory nor contact any of Cardinal's customers anywhere. Upon expiration of that contract, Licocci signed a new contract on July 31, 1979, which, in addition to the above two restrictions, contained a third: That for one year he would not sell or help anyone else sell the same products to the same customers he dealt with while working for Cardinal Associates.

On May 2, 1979, Papp signed an employment contract for a one-year term beginning August 1, 1979. The substance of the agreement was similar to Cardinal Associates' 1978 contract with Licocci. On July 31, 1979, Papp agreed to a substitute contract which added the one-year restriction on sales of the same product to former customers.

On January 17, 1980, the contracts of both salesmen were amended to create escrow accounts from which they could withdraw funds against their commissions, earned or to be earned, on a weekly basis. Twenty percent of the accumulated commissions, if any, could be drawn twice a year, and the balance, less $1,000, was to be paid each September 15, after the close of Cardinal Associates' fiscal year.

This procedure of drawing against commissions was to be in effect only so long as Licocci and Papp worked fulltime for Cardinal Associates. The contract did not provide a procedure for settling the account if the employees left or were fired.

Licocci and Papp worked for Cardinal Associates until the Spring of 1981. Papp sent the company a 30-day notice of termination on March 2. At that time he was drawing $1,200 a week from his account. On March 6, Licocci sent the company a 30-day notice of termination. His weekly draw was $800. Licocci asked for a 20 percent draw from the accumulated earnings, but Cardinal refused.

The company's position was essentially that when Licocci and Papp resigned, they were no longer entitled to any weekly or special draws and payment of any commissions were not due until the regular settlement date of September 15. Moreover, Cardinal Associates believed its two former employees were violating the non-competition agreement. Licocci and Papp responded by suing for immediate payment of the commissions owed, and Cardinal Associates counterclaimed for an injunction to prevent competition. The cases were consolidated and the trial court granted a preliminary injunction enforcing the 60-day ban on competition within the assigned territory and the one-year ban on selling identical products to old customers. Licocci and Papp appealed the court's refusal to dissolve that preliminary injunction.

## I. VALIDITY OF THE CONTRACTS

Licocci and Papp first argue the injunction was improper because it enforced invalid contracts. They contend the contracts lacked "mutuality of obligation" because

Cardinal was not required to accept any of the orders solicited by its salesmen. Item 3 provided:

> "No orders solicited by or on behalf of the Representative shall be binding upon the Corporation unless and until acceptance thereof by the Corporation. The Corporation may reject any orders obtained or reported by the Representative, at its sole discretion."

■ While it is fundamental that a contract is unenforceable if it fails to obligate the parties to do anything, *Davis v. Davis,* (1926) 197 Ind. 386, 151 N.E. 134; *Seco Chemicals Inc. v. Stewart,* (1976) 169 Ind. App. 624, 349 N.E.2d 733; *International Shoe Co. v. Lacy,* (1944) 114 Ind.App. 641, 53 N.E.2d 636; *Grimm v. Baumgart,* (1951) 121 Ind.App. 626, 96 N.E.2d 915, the court necessarily will consider the entire contract and the presence of an acceptance clause alone will not invalidate it. *Imel v. Travelers Indemnity Co.,* (1972) 152 Ind.App. 75, 281 N.E.2d 919.

■ Licocci and Papp rely on *Zeyher v. S.S. & S. Manufacturing Co.* (7th Cir. 1963) 319 F.2d 606. That opinion affirmed the trial court's decision that an employment contract with a provision similar to Cardinal's Item 3 was unenforceable for want of certainty and mutuality in that it created "no obligation which either party can legally enforce against the other." 319 F.2d 607. That conclusion rested on its finding

> "the contract did not bind plaintiff to secure any orders, nor to sell a minimum or maximum, of S.S. & S. products; did not provide for a reasonably certain way of determining the sales price or prices of S.S. & S. products; did not bind S.S. & S. to accept any orders submitted by plaintiff and did not provide a formula for determining when, if any, an obligation to accept an order would arise."

Unlike the parties in *Zeyher,* Licocci and Papp obtained the exclusive right of representation in designated areas. Moreover, Cardinal Associates agreed to provide equipment, samples, literature, sales material, price lists, consumer lists and specialized training. In turn, Licocci and Papp agreed to solicit orders on a commission basis exclusively for Cardinal and to endeavor to sell a minimum of 80,000 units per year.

The exclusivity agreements alone remove this case from the rationale of the *Zeyher* decision, which noted at 319 F.2d 608:

> "In *Wood v. Lucy, Lady Duff-Gordon,* 222 N.Y. 88, 118 N.E. 214 (1917), the court implied consideration where defendant gave an exclusive agency, and unless the agent 'gave his efforts, she could never get anything.' That is not true of S.S. & S. because plaintiff did not have an exclusive agency. We do not find in the case at bar the facts which in *Lady Duff-Gordon* impelled the court to conclude that the transaction there 'was instinct with obligation.' "

Despite the employer's escape clause on accepting orders, we find Licocci's and Papp's contracts as a whole were instinct with obligation. In exchange for their promises to solicit orders, Licocci and Papp obtained exclusive territorial rights in handling Cardinal Associates' products and Cardinal Associates gave up the right to send any additional salesmen into their territories. *See Seco Chemicals, supra.*

The contracts did not fail because of the mere presence of a reservation nor was a preliminary injunction improper for that reason.

## II. BREACH OF CONTRACT

Licocci and Papp next contend it was an abuse of the trial court's discretion to grant an injunction to a party which had breached the contracts it sought to enforce and had illegally withheld compensation from those it sought to enjoin from competition. Specifically, Licocci and Papp say Cardinal Associates breached the employment contracts by: 1) reducing and eventually eliminating the amount permitted to be withdrawn from the escrow account; 2) failing to disburse at the next date for withdrawal from the escrow account the balance of the commissions due, thus violating Ind.Code 22–2–5–1; and 3) refusing to comply with Licoc-

ci's request for a 20 percent withdrawal from the escrow account.

■ All of these issues form the substance of Licocci's and Papp's complaints for money owed, which are questions pending before the trial court. Nevertheless, where it appears *beyond controversy* the appellee violated the contract, an injunction is improper. *Bowerman v. First Merchants National Bank*, (1937) 211 Ind. 344, 7 N.E.2d 198; *Wischmeyer v. Finch*, (1952) 231 Ind. 282, 107 N.E.2d 661.

■ In the case before us, contract violations by the appellee are disputed questions of fact and not at all beyond controversy. The Licocci and Papp contracts only provided for a draw as long as the salesmen remained fulltime employees, and provided no specific method for disbursement of accumulated earnings upon termination of employment. Accordingly Cardinal Associates' discontinuance of the draw pending the September 15 settlement was not beyond controversy a breach of contract.

Licocci and Papp further contend Cardinal Associates failed to comply with Ind. Code 22–2–5–1,[1] which requires the amount due an employee be paid on the next regular payday after voluntary termination. Even if IC 22–2–5–1 applies to sales commissions, a question not before decided, the evidence is not at all clear that a weekly draw against commissions "earned or to be earned" is "an amount due" or that a day designated for withdrawals from an escrow account is a "regular payday." These ques-

tions form the subject of the pending principal litigation in this cause and should be finally decided in that context.

A preliminary conclusion by the trial court that Cardinal Associates had not breached the contract or violated the statute was not clearly erroneous, and equitable relief was not improper on those grounds.

### III. REASONABLE RESTRICTIONS

Licocci and Papp next contend the restrictions on competition were unreasonable and unenforceable under Indiana law. The covenant reads as follows:

"In the event this Contract is terminated by either party hereto in the manner hereinafter setforth the Representative hereby agrees that in as much as the customers to whom products and/or programs are sold by virtue of this agreement or by virtue of any other agreements between the Corporation herein and any of the Representatives are the customers of the Corporation and that in as much as the Representative herin (sic) shall during the term of this Contract and any extensions thereof acquire and attain certain knowledge, expertise, confidential information and sales techniques by virtue of said Representatives having entered into and worked pursuant to this Contract; the Representative does agree that for a period of sixty (60) days from and after the termination of this Contract the said Representative shall not engage in any business or activities,

---

1. Ind.Code 22–2–5–1:

"Payment in money—Semi-monthly or biweekly if requested—Payment on separation. —Every person, firm, corporation or association, their trustees, lessees or receivers appointed by any court whatsoever doing business in this state shall pay each employee thereof at least semi-monthly or biweekly, if requested, the amount due such employee and such payment shall be made in the lawful money of the United States or by negotiable check, draft or money order and any contract to the contrary shall be void. Such payment shall be made for all wages earned to a date not more than ten [10] days prior to the date of such payment: Provided, That nothing herein shall be taken to prevent payments being made at shorter intervals than herein specified nor to

repeal any law providing for such payments: Provided, however, That should any employee voluntarily leave his employment, either permanently or temporarily, such employer shall not be required to pay such employee any amount due such employee until the next usual and regular day for payment of wages, as established by such employer: Provided further, That in the event such employee leaves his employment voluntarily, and without his whereabouts or address being known to such employer, such employer shall not be subject to the provisions of IC 1971, 22–2–5–2 of this chapter, unless and until ten [10] days have elapsed, after such employee has made a demand for such wages due him, or has furnished such employer with his address, where such wages may be sent or forwarded to him."

which directly or indirectly compete in anyway (sic) with the business and activities of the Corporation within the territory assigned to the Representative under this Contract; that the Representative will not for a period of Sixty (60) days from and after the termination of this Contract by either party as hereinafter setforth call upon, talk with or solicit any business from any customers of the Corporation within or outside the territory of the Representative as hereinafter setforth; and further that the Representative will not for a period of one year from and after the term of this contract by either party as herinafter (sic) set forth engage in, participate in, or in any way assist anyone else, directly or indirectly, selling to cusotmers (sic) to whom said representative sold products during the time he was engaged as a Representative of Cardinal Associates Midwest, Inc. any product which is either identical to or essentially the same product as those products said Representative sold to that particular customer while he was representing Cardinal Associates Midwest, Inc." [2]

■ All such covenants as this are in restraint of trade and are not favored by the law. They will be enforced only if they are reasonable with respect to the covenantee, the covenantor and the public interest. We make this determination upon the basis of the facts and circumstances surrounding each case. It depends upon a consideration of the legitimate interests of the covenantee which might be protected, and the protection granted by the covenant, in terms of time, space, and the types of conduct or activity prohibited. *Donahue v. Permacel Tape Corp.*, (1955) 234 Ind. 398, 127 N.E.2d 235.

■ While the burden of proving the facts and circumstances that may justify relief rests with the party seeking to enforce the covenant, the ultimate determination of whether the covenant is reasonable is a question of law for the court. *Donahue, supra; Wiley v. Baumgardner*, (1884)

97 Ind. 66; *Frederick v. Professional Building Maintenance Industries, Inc.*, (1976) 168 Ind.App. 647, 344 N.E.2d 299; *Struever v. Monitor Coach Co., Inc.*, (1973) 156 Ind.App. 6, 294 N.E.2d 654.

■ In addition, if the covenant as written is not reasonable, the courts may not create a reasonable restriction under the guise of interpretation, since this would subject the parties to an agreement they had not made. *Donahue, supra; Wiley, supra.* However, if the covenant is clearly separated into parts and some parts are reasonable and others are not, the contract may be held divisible. The reasonable restrictions may then be enforced. *Welcome Wagon, Inc. v. Haschert*, (1955) 125 Ind. App. 503, 127 N.E.2d 103.

■ In the case before us, the evidence disclosed Licocci and Papp were employed by Cardinal Associates as outside salesmen. The company assigned only one salesman to each territory. Through this employment, the salesman acquired skills and knowledge about company operations and distribution techniques, including lists of past customers, current prices and available products. However, as noted in *Donahue*, the potential use by a former employee of acquired knowledge, skill and information (except trade secrets and confidential information) will not justify a restraint. Although Cardinal Associates may have considered its customer lists confidential, no evidence indicated these lists could have been used to undercut competition or could not easily have been duplicated by alternate means, such as a telephone canvass of the market area. Neither was there evidence the information given salesmen was novel or unique to Cardinal Associates so as to constitute a protectible trade secret.

Licocci and Papp also acquired through their employment the advantage of personal acquaintance with Cardinal Associates' customers in the areas where they worked. The Indiana courts have held the advantageous familiarity and personal contact

2. Cardinal Associates Midwest, Inc. changed its name to Cardinal Associates, Inc. in May 1980.

which employees derive from dealing with an employer's customers are elements of an employer's "good will" and a protectible interest which may justify a restraint, if limited to a reasonable period and to the geographical area of the employee's prior operations. *Donahue, supra; 4408 Inc. v. Losure*, (1978) Ind.App., 373 N.E.2d 899; *Frederick, supra; Miller v. Frankfort Bottled Gas Inc.*, (1964) 136 Ind.App. 456, 202 N.E.2d 395.

In the case before us, the contract restricts competition in three ways. 1) Licocci and Papp were prohibited from soliciting sales from anyone in their former territories for 60 days; 2) they were prohibited for 60 days from calling upon, talking to or soliciting any business from any customer of Cardinal Associates within or outside their former territories; and 3) they were prohibited from selling the same products to any of their former customers for one year.

Before considering the reasonableness of these restrictions, we must first deal with the appellants' argument that if any of the restrictions fail they all fail.

The trial court selectively enforced the covenant's restrictions on competition by ordering compliance with the first and third limitations but not the second. Licocci and Papp argue the covenant was not divisible, citing *Frederick, supra*, and conclude it was error to enforce any of the restrictions if some of them were unreasonable. We do not agree.

The manner in which the covenant in *Frederick* was constructed indicated the intention of the parties was not to limit competition to areas where Frederick worked but to include the entire area where the company operated. It provided:

"James Frederick ... hereby covenants ... that he will not engage in contract building maintenance business, including, but not limited to, janitorial services, window cleaning, floor cleaning, commercial or residential cleaning, either as a sole proprietor, partner, or agent or employee of a corporation or other business organization in the following localities:

The counties of Lake, Porter, La Porte and St. Joseph in Indiana; the counties of Will and Cook, in Illinois, except Chicago; and the counties of Berrien and Van Buren in Michigan.

The covenant shall extend for a period of ten years from the date of termination of the undersigned's employment ...."

The company did business in all the counties listed, but there was no evidence Frederick had worked in more than two or three of them. The Court of Appeals refused to save the covenant by limiting its effect only to the counties of Frederick's employment since that would have amounted to the court subjecting the parties to an agreement they had not made.

■ While Frederick's contract required a rewriting if it were to be saved, the Licocci and Papp contracts did not. They stated three severable and independent restrictions on competition. Elimination of one or more of those restrictions had no effect on the intent of the parties concerning the scope of the remaining restrictions. The courts have found similar covenants divisible. *Wiley, supra; Beard v. Dennis*, (1855) 6 Ind. 200; *Waterfield Mortgage Co., Inc. v. O'Connor*, (1977) 172 Ind.App. 673, 361 N.E.2d 924; *Bennett v. Carmichael Produce Co.*, (1917) 64 Ind.App. 341, 115 N.E. 793.

We hold, therefore, it was not error for the trial court to enforce some but not all of the restrictions, and the failure of any one of the restrictions did not necessitate the destruction of the entire covenant.

Turning to a consideration of the reasonableness of the individual restrictions, Licocci and Papp argue both the second and third limitations were unreasonable in that they reached areas outside the geographic limits of their territories at the time of termination. They do not dispute the reasonableness of the first restriction and the trial court did not enforce the second. We need, therefore, consider only the reasonableness of the third. That restriction forbade for one year the sale of any product

which was either identical to or essentially the same as those products sold previously to a particular customer. Presumably that restraint would forbid sale of the product anywhere the former customer might be found, whether within or outside the former territories of Licocci and Papp. The restriction made no attempt to protect company good will, trade secrets or confidential information. Licocci and Papp were free to contact any former customers to provide fund-raising services or projects so long as they did not use the precise product they used when working for Cardinal Associates.

The record indicates the one-year ban was designed to give Cardinal Associates first opportunity for possible repeat business on their principal products. Cardinal Associates' vice president, Marilyn Rudolph, testified:

> "... [F]or a period of one year he cannot sell directly or indirectly to customers that he sold with us, he cannot sell like products, for instance, if he had a customer that he sold cheese to, he cannot sell cheese to them for one year. The reason or part of the reason for that is because cheese is a very repeatable item, in other words, a person who sold cheese this year will want to sell it next year, and we feel that we should have a chance to get that business back for the following year."

The possibility of repeat business for certain products is not a protectible interest which could justify a restraint on trade. It cannot be inferred the restriction was related to the protection of trade secrets, confidential information or even the leverage acquired by representative contact with the employer's customers, nor was evidence introduced bearing on the reasonableness of the one-year ban in light of any other interest which would justify the restraint. Absent an appropriate factual showing supporting allegations of a protectible interest in the employer, such a covenant is void as against public policy. *Slisz v. Munzenreider Corp.*, (1980) Ind.App., 411 N.E.2d 700.

Accordingly we find no reasonable basis for the one-year restriction on competition.

## IV. ADDITIONAL CONSIDERATION

Licocci and Papp also contend the one-year prohibition from competition was added to the August 1, 1979, contracts without additional consideration and, therefore, should not have been enforced.

In light of our holding above, we need not decide that issue.

## V. INJUNCTIVE RELIEF

Finally, Licocci and Papp contend the preliminary injunction was improper because Cardinal Associates failed to provide sufficient evidence to support the granting of an injunction. Specifically, they maintain there was no showing of irreparable harm or that a remedy at law was inadequate.

Our scope of review for an interlocutory appeal from a preliminary injunction does not differ from that for regular, final appeals. The court will not weigh conflicting evidence nor determine the credibility of witnesses, and will consider only the evidence favorable to the appellee and any reasonable inferences therefrom. The standard for reviewing the evidence is whether the trial court abused its discretion in refusing to dissolve the preliminary injunction. *Gilmer v. Board of Commissioners of Marshall County*, (1981) Ind.App., 428 N.E.2d 1318; *Captain & Co., Inc. v. Towne*, (1980) Ind.App., 404 N.E.2d 1159; *Negley v. Lebanon Community School Corp.*, (1977) 173 Ind.App. 17, 362 N.E.2d 178; *Johnson v. Northwestern School Corp.*, (1976) 170 Ind. App. 142, 352 N.E.2d 531.

The trial court's discretion to grant or deny preliminary injunctive relief is measured by several factors, including whether the plaintiff's remedies at law are inadequate, thus causing irreparable harm before resolution of substantive issues; whether the plaintiff has demonstrated at least a reasonable likelihood of success at trial by establishing a prima facie case; whether threatened injury to the plaintiff outweighs the threatened harm an injunc-

tion may inflict on the defendant, and whether, by grant of the preliminary injunction, the public interest would be disserved. *Indiana State Department of Welfare, Medicaid Division v. Stagner*, (1980) Ind.App., 410 N.E.2d 1348. To justify the grant of a preliminary injunction, it is necessary that pleadings and evidence be such as to present the case for proper investigation in equity and disclose that a grant of such relief is necessary to maintain the status quo and prevent conflict between the parties pending final disposition of the case; it is not necessary that the plaintiff present such a case as would entitle him to relief in all events. *Powell v. Powell*, (1974) 160 Ind.App. 132, 310 N.E.2d 898. On appeal from an interlocutory order granting an injunction, the Court of Appeals does not consider the final merits of the case. *Indiana Gas & Water Co. v. Prentice*, (1964) 245 Ind. 320, 198 N.E.2d 608.

Cardinal Associates presented evidence showing Licocci and Papp had joined a competitor and were attempting to use the relationships they established as representatives of Cardinal Associates for the benefit of that competitor and to the inestimable detriment of Cardinal Associates. This occurred during a time when Cardinal Associates was temporarily removed from competition by the Licocci and Papp defections, both of whom had been the exclusive representatives of Cardinal Associates in their territories.

The first restriction of the covenant reflected a closely fitted effort to protect the company from unfair expropriation and misuse of its intangible good will, in the form of its salesmen's business relationships with customers. The loss of experienced salesmen diminished temporarily the value of Cardinal Associates as a whole and in the short-term removed the company from the marketplace. The loss of good will under such circumstances was a risk of business, but expropriation of that good will by former employees to exploit its competitive power was not.

Accordingly the 60-day restriction on competition by a former employee

within his former territory allowed Cardinal Associates an opportunity to recruit new salesmen and return to the market on an equal footing with its new competitors. We agree with the trial court. A 60-day restriction on competition to protect the company's competitive position with its customers was not unreasonable under these circumstances. Consequently it is the opinion of this court that a preliminary injunction was a proper remedy to prevent irreparable harm to an element of the company's good will pending final resolution of the case on its merits.

We find the trial court did not err in granting preliminary injunctive relief limiting competition by Licocci and Papp in their former territories for 60 days.

However, because we find as a matter of law that a one-year restriction on contact with former customers was unreasonable in light of the interest to be protected, we reverse the trial court on that issue and instruct the court to dissolve that portion of its preliminary injunction.

This case is affirmed in part and reversed in part with instructions.

MILLER, P. J., and YOUNG, J., concur.