Gerald KOZUCH, Koach's Sales Corporation, et al., Defendants-Appellants,

v.

CRA–MAR VIDEO CENTER, INC.,
d/b/a Video Movie Center,
Plaintiff-Appellee.

No. 3–1284A337.

Court of Appeals of Indiana,
Third District.

May 22, 1985.

Rehearing Denied June 27, 1985.

Thomas S. Botkin, Thomas F. Grabb, Hahn, Knepp, Botkin, Roberts & Dvorak, South Bend, for defendants-appellants.

Anthony J. Iemma, Jane E. Barker, Iemma & Hughes, Elkhart, for plaintiff-appellee.

HOFFMAN, Judge.

The facts relevant to this appeal are as follows. Appellants herein are Koach's Sales Corporation (Koach's) and Gerald Kozuch its owner, president, and director. Koach's sells electronic equipment and video cassettes as does appellee CRA–MAR Video Center, Inc. (CRA–MAR herein). CRA–MAR and Koach's are direct competitors.

Koach's purchased a computer and floppy disks from Radio Shack. Sometime after Koach's had purchased its computer, CRA–MAR found that it needed to update its computer system as well, so it also purchased a similar computer and floppy disks from Radio Shack. CRA–MAR used the computer to store customer lists, movie lists, personnel files, and financial material.

As the computer was new to CRA–MAR, Randall Youts, Radio Shack's salesman and programmer, would modify its programs when needed. One of the programs, as stated above, was a customer list, containing the names of all those people who had purchased either video hardware or memberships in CRA–MAR's video rental club. At one point, CRA–MAR decided to make a mailing to everyone on the customer list, but the computer was unable to perform the function. Youts offered the services of Radio Shack's computer so he took the disks containing the customer list, or copies thereof, to the store.

It is uncontested that Koach's somehow came into possession of the disks containing CRA–MAR's customer list. Toward the end of September 1984, Koach's did a promotional mass mailing for which it mailed postcards to people listed in telephone directories as well as those listed on CRA–MAR's customer list. Shortly after the mailing, CRA–MAR sought and obtained a temporary restraining order which enjoined Koach's from making additional mailings from CRA–MAR's list and from redeeming any of the promotional cards

already mailed. After a hearing, the trial court issued a preliminary injunction on November 13, 1984, which read as follows:

"IT IS ORDERED:

That the defendants and their agents and employees be and they hereby are enjoined:

1. From continuing the mailing of post cards to persons whose names have been derived from the plaintiff's customer list and from advertising free membership in defendants' 'Show Stoppers Tape Club' and twenty free movie rentals.

2. Redeeming post cards already mailed to persons whose names were derived from plaintiff's customer list for free membership in defendants' Show Stoppers Tape Club and twenty free movie rentals.

3. Duplicating or preserving plaintiff's customer list for any purpose.

4. Destroying or disposing of any post cards not yet mailed.

5. Destroying or disposing of any post cards received from individuals responding to the mailing.

6. Destroying or disposing of the master list from which the mailing addresses were obtained and further disseminating the list either manually, mechanically, or electronically."

Appellants Koach's and Kozuch appeal the order granting the preliminary injunction and raise six issues for review:

(1) whether the trial court erred in finding that CRA–MAR's customer list is a trade secret;

(2) whether the trial court erred in issuing the preliminary injunction;

(3) whether the trial court erred in enjoining Koach's from redeeming the promotional postcards mailed to persons named on CRA–MAR's customer list;

(4) whether the terms of the preliminary injunction are conflicting thus rendering Koach's unable to obey it;

(5) whether the trial court erred in enjoining Koach's from distributing

CRA–MAR's customer list to its other stores; and

(6) whether the trial court erred in enjoining Koach's from advertising free membership in its "Show Stoppers Tape Club" and twenty free movies.

The first issue which this Court must address is whether the customer list in question is a trade secret within the definition of IND.CODE § 24–2–3–2. That section provides:

" 'Trade secret' means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

The trial court determined that CRA–MAR's customer list is a trade secret. The court found:

"12. The plaintiff's customer list of about five thousand customers comprises information that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means, by other persons who can obtain economic value from its disclosure or use and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy and is, therefore, a trade secret."

This finding specifically addresses each element required by the statutory definition of trade secret. It will not be disturbed on appeal unless it is unsupported by the evidence. This Court will not weigh the evidence but will view only that evidence most favorable to the appellee. *Licocci v. Cardinal Associates, Inc.* (1982), Ind.App., 432 N.E.2d 446.

There was evidence presented at trial that CRA–MAR's customer list included only the names of owners of video hardware purchased at CRA–MAR and those who had purchased memberships in CRA–MAR's video rental club, and were therefore either customers or prospective customers for video movies. There was also evidence that the customer list could not have been created by any means other than through CRA–MAR's business operations. In addition, there was evidence that the list derived its independent economic value from not being generally known or ascertainable by CRA–MAR's competitors. Finally, there was evidence that CRA–MAR took reasonable efforts to maintain the secrecy of the customer list through strict instructions to the computer programmers and operators, as well as locking up the disks containing the customer list. Based upon this evidence, the trial court did not err in finding that CRA–MAR's customer list was a trade secret.

Koach's next contention is that the trial court erred in issuing the preliminary injunction. IND.CODE § 24–2–3–3(a) provides that an actual misappropriation of a trade secret may be enjoined. Here, it is undisputed that Koach's acquired and used CRA–MAR's trade secret, knowing that the acquisition and use was occasioned by a third-party's breach of duty to keep the customer list a secret. This is clearly a misappropriation under the definition in IND.CODE § 24–2–3–2, and therefore, an injunction is proper if the standard for issuing a preliminary injunction is met.

The scope of this Court's review of a preliminary injunction, the granting or denial of which rests in the sound discretion of the trial court, is limited to the determination of whether the trial court's action constituted a clear abuse of that discretion. Discretion to grant or deny a preliminary injunction is measured by several factors: 1) whether the plaintiff's remedies at law are inadequate thus causing irreparable harm pending the resolution of the substantive action if the injunction does not issue; 2) whether the plaintiff has demonstrated at least a reasonable likelihood of success at trial by establishing a prima facie case; 3) whether the threatened inju-

ry to the plaintiff outweighs the threatened harm the grant of the injunction may inflict on the defendant; and 4) whether, by the granting of the preliminary injunction, the public interest would be disserved. *College Life Ins. Co. of America v. Austin* (1984), Ind.App., 466 N.E.2d 738.

In determining whether an abuse of discretion exists in the grant or denial of a preliminary injunction, this Court is necessarily involved with a review of the trial court's findings of fact. The findings may not be set aside unless they are clearly erroneous. If the findings are clearly erroneous, we must conclude that the trial court abused its discretion in granting the preliminary injunction. *Steenhoven v. College Life Ins. Co. of America* (1984), Ind. App., 458 N.E.2d 661.

The trial court found that, "[t]he defendant's use of the plaintiff's customer list will result in irreparable damage to the plaintiff...." Koach's argues that the evidence does not support this finding. Again, this Court will not weigh the evidence but will view only that evidence most favorable to the appellee. *Licocci v. Cardinal Associates, Inc., supra,* Ind.App., 432 N.E.2d 446.

The trial court properly determined that CRA–MAR's customer list was a trade secret and it is clear from the evidence that Koach's misappropriated that trade secret. In addition, there was evidence that the list's value is lost when it is disclosed to competitors. There was testimony that through Koach's use of CRA–MAR's list, CRA–MAR's customer base had begun to erode and that a loss of customers would force CRA–MAR out of business. Based upon this evidence, the trial court did not err in finding that irreparable harm would result from Koach's continued use of CRA–MAR's customer list.

Koach's also argues that CRA–MAR failed to demonstrate a reasonable likelihood of success at trial by establishing a prima facie case. Koach's merely states in its brief that there was no showing of a misappropriation of a trade secret. How-

ever, having previously determined that there was evidence to establish the misappropriation of a trade secret within the meaning and definitions of the statute, Koach's argument fails.

The trial court also found that the irreparable harm to CRA–MAR from Koach's continuing use of its trade secret outweighs the benefit which would be lost by Koach's if the injunction were granted. As stated previously, the trial court did not err in determining that Koach's continued use of CRA–MAR's customer list would cause irreparable harm to CRA–MAR. The order enjoining Koach's from any further use of that customer list would only cause it to resort to its past methods of advertising. Therefore, the trial court's finding on the issue of harm and benefit was not error.

The final factor to be considered in determining whether to issue the preliminary injunction is whether the public interest would be disserved by the granting of the preliminary injunction. Koach's argues that the public would be disserved by the injunction, whereas CRA–MAR argues that the public interest is served by it.

It is apparent by the enactment of the Uniform Trade Secrets Act[1] that the Indiana Legislature intended to serve the public interest by giving protection to trade secrets, valuable assets to any business. As a result, the public interest is clearly served by the trial court's enforcement of the law. Therefore, the trial court did not err in granting the preliminary injunction against Koach's.

Koach's next contention is that the trial court erred in enjoining Koach's from redeeming the promotional postcards already mailed to persons named on CRA–MAR's customer list. Through its brief Koach's agrees that injunctive relief is proper to prevent further use of CRA–MAR's trade secret, but argues that it may not be enjoined from reaping the benefits of its previous use.

---

1. IND.CODE § 24–2–3–1 *et seq.*

The purpose of temporary injunctive relief is to preserve the status quo pending adjudication of the case on its merits. *Kramer v. Rager* (1982), Ind.App., 441 N.E.2d 700. This Court has held that the status quo is the last actual, peaceful and noncontested status which preceded the pending controversy. *Rees et al. v. Panhandle E. Pipe Line Co.* (1978), 176 Ind. App. 597, 377 N.E.2d 640. To enjoin Koach's further use of CRA–MAR's customer list without enjoining future acts occasioned by the past use of that list would not preserve the status quo. Therefore, the trial court did not err in enjoining Koach's from redeeming the promotional postcards mailed to persons named on CRA–MAR's customer list.

Koach's next contends that the terms of the court's order are conflicting and thus Koach's is unable to obey the order. Specifically Koach's points to the following provisions:

"[D]efendants ... are enjoined:

\*      \*      \*      \*      \*      \*

3. [From] [d]uplicating or preserving plaintiff's customer list for any purpose.

\*      \*      \*      \*      \*      \*

6. [From] [d]estroying or disposing of the master list from which the mailing addresses were obtained and further disseminating the list either manually, mechanically, or electronically."

A review of the record, however, shows that there is no contradiction or conflict between those provisions. There was testimony that after Koach's received the floppy disks containing CRA–MAR's customer list, the information on those disks was restored onto Koach's own hard disks and a computer printout was made of the information contained in the customer list. Based upon this evidence, it is clear that the trial court, by paragraph 6 of its order, meant for Koach's to preserve the original floppy disks which it had received from Radio Shack's employee. Paragraph 3 is also clear in that the trial court intended for Koach's to destroy all copies, recordings, and printouts of the original floppy disks or the information contained thereon. As these two provisions are not in conflict, there is no error.

Koach's also contends that the trial court erred in enjoining it from distributing CRA–MAR's customer list to its other stores. Koach's alleges that this precludes it from determining whether people attempting to redeem promotional postcards at those stores had been contacted through the CRA–MAR list.

There is conflicting evidence in the record whether Koach's is able to determine by the face of the postcards whether the addressee's name was taken from CRA–MAR's list or one of the various directories. However, there is no evidence to support Koach's contention that disseminating CRA–MAR's list to all of its outlying stores is its only means of making that determination. As a result, the trial court's order preventing the further dissemination of CRA–MAR's customer list was not error.

The final contention which Koach's makes is that paragraph 1 of the trial court's order is unconstitutional in that it violates Koach's First Amendment right to freedom of speech. The challenged paragraph reads as follows:

"That the defendants and their agents and employees be and they hereby are enjoined:
1. From continuing the mailing of post cards to persons whose names have been derived from the plaintiff's customer list and from advertising free membership in defendants' 'Show Stoppers Tape Club' and twenty free movie rentals."

Koach's would have this Court read only the second portion of the paragraph and argues that being enjoined from advertising memberships in its movie club and the free movies is unconstitutionally restrictive. However, this paragraph must be read in its entirety in order to understand the trial court's intent. The trial court was attempting to preserve the status quo by enjoining any further use of CRA–MAR's customer list. It is clear that the trial

court did not intend to prohibit Koach's from any type of advertising but merely meant that Koach's could not advertise free memberships in its movie club or offer free movies to those persons whose names were selected solely from CRA–MAR's customer list. As this provision of the order does not restrict Koach's advertising, but for the use of CRA–MAR's list, there is no error. Therefore, the trial court is affirmed.

Affirmed.

STATON, P.J., and GARRARD, J., concur.