Walker *et al. v.* Jameson.

Filed March 21, 1895.

———◆———

No. 17,102.

## WALKER ET AL. *v.* JAMESON.

Municipal Corporation.—*Garbage Ordinance.—Requiring Payment for Hauling Garbage.*—An ordinance prohibiting owners or tenants of premises from hauling away garbage from their premises, requiring them to put it into receptacles convenient for removal by a public contractor, requiring such owners or tenants to pay a certain specified amount per pound, but not prohibiting their destruction of such garbage on the premises (taking care not to create a nuisance in so doing), is valid under and authorized by the provisions of a statute empowering the common council to enact ordinances "to prevent the deposit of any unwholesome substances, either on private or public property; to compel its removal to designated points, and to require slops, garbage, ashes, waste or other material to be removed to designated points, or to require occupants of premises to place them conveniently for removal."

Same.—*Removal of Garbage, Cost of not an Assessment Upon Premises.* —The cost of the removal of such garbage is not an assessment upon the premises from which it is removed.

Same.—*Power to Fix Cost of Removal of Garbage.*—A statute giving the board of public works power "to remove all dead animals, garbage, filth, ashes, dirt, rubbish, or other offal from such city, either by contract or otherwise," confers upon the board power to fix the price for the removal of garbage.

Same.—*Assessment Defined.*—An assessment is a charge laid upon individual property for the reason that such property receives a special benefit which is different from the general one which the owner enjoys in common with others as a citizen. It is levied only upon the property benefited, and is uniformly restricted to the means for

paying those local burdens arising by reason of the wants of small communities.

SAME.—*Police Power.*—*Public Welfare.*—It is within the general power of a government to preserve and promote the public welfare, even at the expense of private rights.

SAME.—*Power to Declare a Nuisance.*—*Doubtful Instances.*—A municipal corporation has no power to treat a thing as a nuisance which can not be a nuisance; but it has the power to treat as a nuisance a thing which, from its character, location and surroundings, may, or does become such. In doubtful instances, where a thing may or may not be a nuisance, depending upon a variety of circumstances requiring judgment and discretion on the part of the municipal authorities in the exercise of their legislative functions, under a general delegation of power, their action declaring a certain thing a nuisance is conclusive of the question and binding on the courts.

SAME.—*Power to Delegate Police Powers.*—*Health.*—The State may delegate to a municipal corporation authority to enact ordinances to preserve the public health.

SAME.—*Police Powers, When Shall be Exercised.*—*Discretion.*—It rests solely with the legislative discretion, inside the limits fixed by the constitution, to determine when public safety or welfare requires the exercise of the police power.

SAME.—*Method of Exercising Power When Statute is Silent.*—If power be conferred on a municipal corporation by a law of the State, and such law does not prescribe the mode of performing the act, the corporate authorities are necessarily clothed with a reasonable discretion to determine the manner in which the act shall be performed; and all reasonable methods of executing such power are permissible.

From the Marion Circuit Court.

*J. E. McCullough, H. N. Spaan, J. F. Carson* and *C. N. Thompson,* for appellants.

*W. H. H. Miller, F. Winter* and *J. B. Elam,* for appellee.

DAILEY, J.—On July 12, 1893, the city of Indianapolis, by its board of public works, by contract (a copy of which is in the complaint), clothed James H. Woodward with the exclusive right and obligation to remove the garbage from the premises of all persons in said city,

and to transport the same through the streets thereof to the crematory.

On August 18, 1893, with the written consent of the city, said Woodward assigned the contract to the appellee Jameson. The circuit court, at the suit of Jameson, after due notice and hearing on complaint and affidavits, enjoined appellant from interfering with or removing such garbage. By this appeal appellants attack the ruling of the circuit court granting that injunction.

The general ordinance of the city, No. 5, 1893, designed to effectuate the contract, is set out in the complaint. The contract makes it the duty of the contractor to remove all the garbage. The ordinance requires the householder to place the garbage in proper receptacles, convenient for removal, and forbids any person, other than the contractor, to interfere with or remove the same. The ordinance is expressly authorized by section 23 of the charter (Acts 1881, pp. 143, 4 and 6), wherein it is provided that the common council shall have the power to enact ordinances "to prevent the deposit of any unwholesome substances, either on private or public property; compel its removal to designated points, and to require slops, garbage, ashes, waste or other material to be removed to designated points, or to require the occupants of premises to place them conveniently for removal."

In strict pursuance of this expressly authorized power, the ordinance in question was passed. Section 59 of the city charter (Acts 1891, pp. 167–8–9, etc.), expressly authorizes the board of public works "to remove all dead animals, garbage, filth, ashes, dirt, rubbish or other offal from such city, either by contract or otherwise." Accordingly, the common council having authority to pass the ordinance providing for the collection and

storage in proper receptacles of the garbage, and the board of public works having authority to remove the same, the ordinance was passed and the contract was made, each supplementing the other, to carry out the common duty imposed on the two bodies for the protection of the public health in the prompt and efficient removal of all garbage in an inoffensive manner.

The contract was let to the lowest bidder, as section 61 of the charter provides. It fixes the price for removal by the contractor at $\frac{249}{1000}$, practically one-fourth of a cent per pound, this being the maximum; permits the contractor to collect the same from the householder, the party producing the garbage; and expressly exempts the city from any liability in the premises.

Appellants contend that this contract is invalid for several reasons: 1st. The contention is that the contract is invalid because the board of public works had no authority to make it.

The first reason given in support of this claim is that the provision for payment by the householder for the removal of his garbage is an "assessment" against him or his property, and, as the charter does not confer the power to make an assessment of this kind, therefore it can not be made. If the premise were correct the conclusion would necessarily follow. The infirmity is in the assumption that this contract provides for an assessment, either upon person or property. An assessment is a charge laid upon individual property, because the property upon which the burden is imposed receives a special benefit which is different from the general one which the owner enjoys in common with others as a citizen. Elliott's Roads and Streets, 370.

When the Legislature so declares, a lien in the amount fixed fastens upon the property, as against the owner and

all who acquire rights subsequent to the time it attaches. Elliott Roads and Streets, 432.

An assessment is levied only upon the property benefited. It has been uniformly restricted to the means for paying those local burdens arising by reason of the wants of small communities. The general meaning of the word "assessment" is authoritative imposition. Welty's Law of Assessments, pages 2 and 3.

In this case there is nothing of the kind. No householder is required to have garbage removed or pay for its removal. Every householder may destroy all his garbage on his own premises, taking care not to create a nuisance in so doing. If he do not destroy all, he may reduce it to a minimum. This ordinance and contract simply provide that if he does produce garbage which has to be carted through the streets, the city or its agent, the contractor, shall do the work at his expense. Whatever else it may be, it is certainly not an assessment. It has not a single element of an assessment for the reasons:

1st. That except by the voluntary act of the householder, nothing is to be paid at all.

2d. No definite amount, in any event, is to be paid.

3d. Nothing is made a charge upon the property.

The whole arrangement is simply a provision by the ordinance that garbage shall be collected and carted through the streets only by a licensed agent of the city; second, that parties producing the garbage needed to be thus carted away shall place the same in proper vessels, convenient for the removal by such agent; and third, that such agent shall charge not exceeding the price named for removing the same.

It is no more an assessment than is the provision of the ordinance fixing the rate of payment for gas, or water, or street car fare, as authorized by section 59 of the city charter, or the numerous provisions of section

23, specifying that the common council may require things done by the parties, and, if not so done, have the city do them at their expense, as taking down dangerous buildings, removing snow from the walks, etc. It can not be said that the charter does not expressly authorize the fixing of prices for removal of garbage, because the same section which confers upon the board the power "to remove all dead animals, garbage, filth, ashes, dirt, rubbish, or other offal from such city, either by contract or otherwise," impliedly authorizes the fixing of a price therefor; that is the very essence of the power to contract.

The appellants' learned counsel say: "But the charter never gave the board of public works power to contract for removal of garbage on behalf of anyone, except on behalf of the municipal corporation. Had it undertaken to confer upon them the power to fix prices which should be paid by citizens for its removal, then it would have said so in express terms, just as it did with reference to water, gas, etc. The fact that it did not do so is evidence * * * that it contemplated or conferred no such power."

It is within the general power of a government to preserve and promote the public welfare even at the expense of private rights. 18 Am. and Eng. Encyc., etc., 739, 740. Police power is defined in *New Orleans Gas Light Co.* v. *Hart*, 40 La. 474, 8 Am. St. Rep. 574, where it is said: It is the right "of a State functionary to prescribe regulations for the good order, peace, protection, comfort and convenience of the community, which do not encroach on the like power vested in congress by the federal constitution."

In *Commonwealth* v. *Alger*, 7 Cush. (Mass.) 53, the court lays down the rule that "rights of property, like all other social and conventional rights, are subject to

such reasonable limitations in their enjoyment as shall prevent them from being injurious, and to such reasonable restraints and regulations established by law, as the Legislature, under the governing and controlling power vested in them by the constitution, may think necessary and expedient.''

In *Thorpe* v. *Rutland, etc., R. R. Co.,* 27 Vt. 140 (149), 62 Am. Dec. 625, it is said: ''By this general policy power of the State, persons and property are subjected to all kinds of restraints and diligence in order to secure general comfort, health and prosperity of the State.''

In *Town* of *Lake View* v. *Rose Hill Cemetery Co.,* 70 Ill. 191, the court say: ''The police power of the State is co-extensive with self-protection, and is applicably termed the law of overruling necessity. It is the inherent and plenary power in the State, which enables it to prohibit all things hurtful to the comfort and welfare of society.'' *Hale* v. *Lawrence,* 21 N. J. Law 714; Tiedeman's Lim. of Police Power, section 1.

It is said in 18 Am. and Eng. Ency. of Law, 744-745, that a law which might be invalid as an exercise of the right to tax for revenue, might be sustainable where its purpose was the promotion of the general public health or morals. In exercising the power of taxation, no discriminations are to be made; while in the exercise of police power the State is ordinarily to be governed only by *considerations* of what is for the public welfare. It rests solely within legislative discretion, inside the limits fixed by the constitution, to determine when public safety or welfare requires its exercise. This must be determined by recognized principles. ''Courts are authorized to interfere and declare a statute unconstitutional only when it conflicts with the constitution; with the wisdom, policy or necessity of such an enactment, they have nothing to do.'' 18 Am. and Eng. Ency. of Law 746.

It resolves itself solely into a question of power and not of mere reasonableness. We recognize the rule that a municipal corporation has no power to treat a thing as a nuisance which can not be one; but it is equally well settled that it has the power to treat as a nuisance a thing that, from its character, location and surroundings, may, or does become such. In doubtful cases, where a thing may or may not be a nuisance, depending upon a variety of circumstances requiring judgment and discretion on the part of the town authorities in exercising their legislative functions, under a general delegation of power like the one we are considering, their action, under such circumstances, would be conclusive of the question. *Baumgartner* v. *Hasty*, 100 Ind. 575 (578.)

In 15 Am. and Eng. Ency. of Law, 1173, it is said: "Municipal corporations are usually given authority to pass ordinances providing for the preservation of public health. This is one of the police powers of the State, and there can be no doubt that the sovereignty has the right to delegate this power to municipal authorities."

In 2 Beach on Public Corporations, section 995, it is said: "A by-law of a city prohibiting any person not duly licensed by its authorities from removing the house dirt and offal from the city is not in restraint of trade, but reasonable and valid, on the ground that in the interest of the public health a city is justified in providing for some general system for removing offensive substances from the streets by persons engaged by the city and responsible for the work at such times as they are directed to attend to it."

So Dillon Munic. Corp., section 369, is as follows: "Our municipal corporations are usually invested with power to preserve the health and safety of the inhabitants. This is, indeed, one of the purposes of local gov-

ernment, and reasonable by-laws in relation thereto have always been sustained in England as within the incidental authority of corporations to ordain.    It will be useful to illustrate the subject by reference to some of the adjudged cases.    An ordinance of a city prohibiting, under a penalty, any person not duly licensed therefor by the city authorities, from removing or carrying through any of the streets of the city any house dirt, refuse, offal or filth, is not improperly in restraint of trade, and is reasonable and valid.    Such a by-law is not in the nature of a monopoly, but is founded on a wise regard for the public health.    It was contended that the city could regulate the number and kind of horses and carts to be employed by strangers or unlicensed persons, but practically it was considered that the main object of the city could be better accomplished by employing men over whom they have entire control, night and day, who are at hand, and able from habit to do the work in the best way and at the proper time. '' It has been often held to be reasonable to grant to one or more the exclusive right to remove the carcasses of dead animals and other offal of a city.    *Vandine, Petitioner*, 6 Pick. ( 23 Mass. ) 187, 7 Am. Dec. 351; Cooley Const. Lim. (6th ed.), p. 739; Tiedeman's Lim. of Police Power, p. 316; Dillon Munic. Corp., sections 141–2.

In the case of *Boehm* v. *Mayor, etc., of Baltimore* ( 1883 ), 61 Md. 259, it was held that the city, under the power to preserve the health and safety of its inhabitants, had the undoubted right to pass ordinances creating boards of health, appointing health commissioners with other subordinate officers, regulating the removal of house dirt, night soil, refuse, offal and filth by persons licensed to perform such work, and providing for the prohibition, abatement and suppression of whatever was intrinsically and inevitably a nuisance.    The case of *Vandine, Pe-*

*titioner, supra,* 187, is in point here. It directly adjudges that a by-law of the city of Boston, prohibiting anyone not licensed by the city from removing house dirt and offal from the city is valid. On the trial, the court instructed the jury that the subject of regulation was one on which it was proper for the city to legislate, it having reference to the public convenience and the health of the inhabitants; * * * that it was the duty of the city to remove from the streets and houses all nuisances which might generate disease or be prejudicial to the comfort of the inhabitants, and it was both reasonable and proper that it should be in their discretion to contract with persons to perform the work so that it might be done on a general system. If it were found, on experiment, that the duty would not be thoroughly and faithfully performed, or would be attended with more expense to the city if individuals should remove these substances in their own carts and upon their own account, it was competent for the city government to enact a by-law which should subject all such persons to the vigilance of that government and which should require them to be first licensed. The jury were further instructed that so far as, by virtue of the general laws of the commonwealth, the city council had power to make by-laws for governing the city, these regulations were binding on all persons actually resident within its limits, either for business or pleasure, and whether inhabitants or strangers; that the object of the by-law being to secure to the city the regular and effectual removal, by public authority, of all sources of nuisance which are collected and accumulated in the houses in the city by not suffering individuals, under no obligation of trust, to interfere in the same, it amounted to the prohibition of a nuisance, and that so far as it affected trade it was not a restraint, but only a regulation of it. The

defendant excepted to these instructions, and on appeal, urged chiefly that the by-law was void, being in restraint of trade; also, that it created a monopoly, and that the city had no right to say it should be removed only by a person having a license.    In ruling upon this question, the court upheld the instructions of the trial court and said: ''The great object of the city is to preserve the health of the inhabitants.    To attain that, they wisely disregard any expenses which are deemed to be requisite.    They might probably have these offensive substances carried out of the city without any expense if they would permit the people from the country to take them away at such times and in such manner as would best accommodate them.    Every one will see that if this business were thus managed there would be continual moving nuisances at all times and in all the streets of the city, breaking up the streets by their weight and poisoning the air with their effluvia.    *    *    *    It seems to us    *    *    *    that the city authority has judged well in this matter.    They prefer to employ men over whom they have entire control by night and by day, whose services may be always had and who will be able, from habit, to do this work in the best possible way and time. Practically, we think the main object of the city government will be better accomplished by the arrangement they have adopted than by relying upon the labor of others, against whom the government would have no other remedy than by a suit for a breach of contract. The sources of contagion and disease will be speedily removed in small loads, which will not injure the pavements nor annoy the inhabitants.    We are satisfied that the law is reasonable, and not only within the power of the government to prescribe, but well adapted to preserve the health of the city.''

In view of the great weight of authorities, we are of the opinion that the contract and ordinance assailed are both within the long settled and clearly recognized lines of police power, which is as broad as the power of taxation, and being simply a sanitary regulation, they can not be considered as in the nature of confiscation or an attempt to create a monopoly. The provision for the removal of the garbage at the expense of the property-holder is an extreme exercise of this power, but is an incident to its existence.

It is a familiar rule that if the power is conferred upon a municipal corporation by the laws of the State, and the law is silent as to the mode of doing such act, the corporate authorities are necessarily clothed with a reasonable discretion to determine the manner in which such act shall be done; all the reasonable methods of executing such power are inferred. *Lewisville Natural Gas Co.* v. *State, ex rel.*, 135 Ind. 49; Thornton's Munic. Law, section 3102, note 3, and cases cited.

The right of removal by contract or otherwise being vested in the city, it was for the common council to determine whether the work should be paid for out of the city treasury or by the person producing the garbage, and their action is not subject to review here. It may be that the hotel and restaurant keepers will lose money on their garbage under the workings of this contract, where they before derived a revenue, but if, under this plan, the sources of contagion and disease will be more speedily and effectively removed, the city was empowered to make this contract.

It may be the common council thought it unjust that the house-holders who produced a small amount of garbage should be taxed to assist in removing the large accumulations of hotels and restaurants, but we have

nothing to do with the motives that prompted the act in question.

We find no error in the record.

The judgment is affirmed.

Filed May 9, 1894.

### ON PETITION FOR A REHEARING.

PER CURIAM.—The question whether or not the appellee could recover from the citizen the contract price, or any other sum, for the removal of garbage, is not involved in this case.

The right of the appellee to recover in this action does not depend upon the liability of the citizen to pay for the removal of his garbage. Any expression or reasoning in the opinion that there is such liability was not necessary to the determination of this cause. It will be time to decide that question when it arises, if ever, between the appellee and the citizen in an action to recover for the removal of such garbage.

If it were admitted that the garbage producers are not bound by the terms of the contract and can not be compelled to pay for the removal of the garbage, such fact would not be available as a defense to this action by appellants. No one, unless it be the appellee, could take advantage of such fact. For all that appears in the record he may be willing to comply with the terms of the contract, even if the persons on whom he has agreed to rely for payment are not bound thereby and nothing can be collected from them. If so, he has the same right to recover in this action against the appellants as if he were to be paid out of the general fund of the city or could compel payment by the citizen.

The appellee, by this action, does not seek to avoid the contract, but to protect the rights he claims under it.

We adhere to our opinion that the judgment of the court below should be affirmed.

Petition for a rehearing is overruled.

Filed Mar. 1, 1895.

### DISSENTING OPINION.

McCABE, J.—I can not concur in all the reasoning in the foregoing opinion, though I do not dissent from the general conclusion reached.

I am unable to concur in so much of the opinion as holds that persons whose business creates large quantities of slops and offal and which is of large value are liable to have the same taken from them and destroyed without compensation. I do not think it within the power of the Legislature or the city to confiscate the private property of the citizen and destroy it, except upon necessity. I do not think there is any necessity to do so with such large quantities of offal and slops until its owners have refused to comply with reasonable regulations for the removal thereof by such owners.

Filed May 9, 1894.