**TIPPECANOE SANITARY LANDFILL, INC., an Indiana Corporation, Appellant,**

v.

**BOARD OF COUNTY COMMISSIONERS OF TIPPECANOE COUNTY,**
Indiana, Appellee.

No. 2–982A324.

Court of Appeals of Indiana, First District.

Nov. 10, 1983.

Rehearing Denied Dec. 20, 1983.

Louis Pearlman, Jr., Edward Chosnek, Pearlman & Chosnek, Lafayette, for appellant.

J. Frederick Hoffman, Hoffman, Melichar & Luhman, Lafayette, for appellee.

RATLIFF, Judge.

### STATEMENT OF THE CASE

In an action for injunctive relief initiated against the appellant, Tippecanoe Sanitary Landfill, Inc. (TSL), by T.R. Ash Company, TSL filed a third-party complaint against the Board of County Commissioners of Tippecanoe County (Board of Commissioners). The Board, in turn, moved for summary judgment. This motion was granted by the Tippecanoe Superior Court on April 29, 1982. It is from this determination that TSL now appeals.[1] We affirm in part, reverse in part, and remand.

---

1. T.R. Ash Company is not a party to the present appeal.

## FACTS

Following promulgation of the Refuse Disposal Act of 1965,[2] declaring open dumps to be "inimical to human health," Indiana Code section 19–2–1–31 (1974),[3] governmental units were required to dispose of refuse by one of the methods delineated in Indiana Code section 19–2–1–3(a)—(e) (1974).[4] The Act also provided governmental units with the authority to contract with private parties for the collection and disposal of refuse, Indiana Code section 19–2–1–4 (1974);[5] appropriate land for disposal premises and facilities, Indiana Code section 19–2–1–5 (1974);[6] and "make and enter into contracts or agreements necessary or incidental to the performance of its duties and the execution of its powers under this act." Indiana Code section 19–2–1–7 (1974).[7]

In response to the Act, various open dumps in Tippecanoe County were closed and an agreement was made among the Board of Commissioners, City of Lafayette, City of West Lafayette, and the Trustees of Purdue University providing for the establishment of a single sanitary landfill which would be available to all residents of Tippecanoe County.

As a result of this agreement, TSL was formed in 1971 and since that time has operated the only sanitary landfill in Tippecanoe County. In the year of its formation, TSL contracted with the Board of Commissioners to accept all refuse delivered to its landfill by the various refuse haulers in the county. The contract further provided that TSL would charge a maximum rate of $2.40 per ton of refuse delivered to its site. This amount, however, could be increased periodically in accordance with the Construction Cost Index.[8]

In 1976, the Board of Commissioners adopted ordinance 76–19. Tippecanoe County, Ind., Ordinance 76–19 (June 14, 1976). This ordinance, in short, provided a comprehensive scheme for regulating and licensing of persons engaged in the collection and disposal of refuse in the county.

Following expiration of the contract between TSL and the Board of Commissioners, ordinance 76–19 was amended by the enactment of ordinance 81–10. Tippecanoe County, Inc., Ordinance 81–10 (June 1, 1981). Through this amendment, maximum rates were established for landfill operators in the county with provisions for periodic increases in accordance with the Construction Cost Index.

Despite the establishment of maximum rates, TSL announced that commencing June 1, 1981, its rates would increase from $5.40 per ton to $8.50. In response to this increase, one of the major refuse haulers in the county, T.R. Ash Company, sought injunctive relief to prohibit TSL from charging the higher rate. TSL responded by filing a third-party complaint against the Board of Commissioners alleging that ordinances 76–19 and 81–10 were void and unconstitutional.

The Board's motion for summary judgment was granted and TSL now appeals.

## ISSUES

Six issues are raised by TSL. For purposes of clarity, we restate them as follows:

1. Were ordinances 76–19 and 81–10 properly enacted in accordance with the

---

2. Indiana Code sections 19–2–1–1 through 32 have since been repealed. For present law see Indiana Code sections 36–9–30–1 through 35 (1981 Repl.).

3. For present law see Indiana Code section 36–9–30–35 (1981 Repl.).

4. For present law see Indiana Code section 36–9–30–4(1)—(5) (1981 Repl.).

5. For present law see Indiana Code section 36–9–30–5 (1981 Repl.).

6. For present law see Indiana Code section 36–9–30–7 (1981 Repl.).

7. For present law see Indiana Code section 36–9–30–8 (1981 Repl.).

8. This index, published by the Engineering News Record, is composed of the cost of common labor, lumber, cement, and steel.

procedure set forth in Indiana Code section 17–2–22–5 (1974)?[9]

2. Did the enactment of the Refuse Disposal Act pre-empt Indiana Code section 17–2–22–4 (1980 Supp.)[10] as well as ordinances 76–19 and 81–10?

3. Are ordinances 76–19 and 81–10 in excess of the authority granted by Indiana Code section 17–2–22–4 (1980 Supp.)?

4. Does the word "regulate," found in Indiana Code section 17–2–22–4 (1980 Supp.), include the power to establish the maximum rates which may be charged by sanitary landfill operators?

5. Are the standards for establishing maximum rates contained in ordinance 81–10 reasonable?

6. Does the establishment of maximum rates by the Board of Commissioners deprive TSL of its property without due process of law, deny it equal protection, or constitute an abuse of the Board's police powers?

### DISCUSSION AND DECISION

■ At the outset, we note TSL is appealing from the granting of summary judgment to the Board of Commissioners. Consequently, TSL must establish, with regard to the issues it argues, that there is a genuine issue of material fact which made disposition by means of summary judgment inappropriate. Indiana Rules of Procedure, Trial Rule 56(C); *Osborne v. State,* (1982) Ind.App., 439 N.E.2d 677, 684. In determining whether a genuine issue of material fact was present, the trial court was bound to accept as true all facts alleged by TSL and resolve all doubts against the Board. *Osborne,* 439 N.E.2d at 684; *Moll v. South Central Solar Systems, Inc.,* (1981) Ind.App., 419 N.E.2d 154, 159; *Kendrick Memorial Hospital, Inc. v. Totten,* (1980) Ind.App., 408 N.E.2d 130, 134. However, nonmoving parties, such as TSL, may not merely rely upon the allegations in their complaint, but must come forth with sufficient factual allega-

tions to establish the existence of genuine issues. *Associates Financial Services Co. of Kentucky, Inc. v. Knapp,* (1981) Ind.App., 422 N.E.2d 1261, 1264. Notwithstanding a nonmoving party's failure to make such a showing, a trial court may not grant the motion unless the moving party can establish it is entitled to judgment as a matter of law. *Nationwide Mutual Insurance Co. v. Neville,* (1982) Ind.App., 434 N.E.2d 585, 589, *trans. denied.*

■ Thus, in reviewing the granting of summary judgment, this court engages in a two-step analysis. First, we must be satisfied there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Then, upon such a determination, we must ascertain whether the trial court has properly applied the law. *Nahmias v. Trustees of Indiana University,* (1983) Ind.App., 444 N.E.2d 1204, 1206, *trans. denied.*

Our standard of review thus stated, we turn to the specific issues raised by TSL. *Issue One*

■ The first issue raised by TSL concerns the promulgation of ordinances 76–19 and 81–10. According to TSL, these ordinances were enacted in a manner contrary to the procedures delineated in Indiana Code section 17–2–22–5 (1974). That section provided:

"Any ordinance as provided for in sections 2, 3, and 4 [17–2–22–2—17–2–22–4] hereof may be introduced at any meeting of the board of commissioners of any county. A written copy of the proposed draft shall be provided at the time of introduction and the board shall assign to each proposed draft for an ordinance a distinguishing number. Not more than seven [7] days after the introduction of a proposed draft of an ordinance nor less than seven [7] days before the final passage of a proposed ordinance, the board shall publish a notice that the proposed draft for an ordinance is pending final

9. This section was repealed on September 1, 1981. For present law see Indiana Code section 36–8–2–4 (1981 Repl.).

10. This section was repealed on September 1, 1981. For present law see Indiana Code section 36–8–2–4 (1981 Repl.).

action by the board. Said notice shall be published in two [2] newspapers of general circulation within the county. The board shall include in the notice reference to the subject-matter of the proposed ordinance and the time and place of hearing will be had thereon and shall indicate that the proposed ordinance is available for public inspection at the office of the board. The board shall, not later than the date of notice of the introduction of a proposed ordinance, place five [5] copies of the proposed ordinance on file in the office of the board for public inspection. At a meeting for which notice has been given as required by this section, the board may take final action on the proposed ordinance or may postpone final consideration thereof to a designated meeting in the future without giving additional notice. The board may adopt an ordinance only at a meeting which is open to the public. Before adopting an ordinance, the board shall give opportunity to any person present at the meeting to give testimony, evidence or argument for or against the proposed ordinance, in person or by counsel, under such rules as to the number of persons who may be heard and time limits as may be adopted by the board. When an ordinance is adopted the board shall at the same meeting designate the effective date of the ordinance. If the board fails to designate the effective date of the ordinance in the record of the proceedings of the board, the ordinance shall be effective on the fourteenth day after its passage. When the board adopts an ordinance, the board shall cause copies thereof to be made which shall be available to the public. The board may provide for the printing of such ordinance in pamphlet or book form and may distribute the same without charge or may charge the cost of printing and distribution."

*Id.* Specifically, TSL alleges the Board adopted the ordinances without a hearing and without notification to its president, Gerald Schlossberg. Further, TSL asserts there is no evidence the Board made a proper distribution of the ordinances upon their enactment. These contentions have no merit.

In its Findings of Fact and Conclusions of Law, the trial court expressly determined: "The Board of County Commissioners of Tippecanoe County Indiana had statutory authority to enact ordinances regulating the disposal of garbage and rubbish, and that ordinance No. 76–19 and ordinance No. 81–10 were duly enacted and regulate and apply to the sanitary landfill being operated by the defendant." Record at 129. Examining the evidence which was before the trial court we cannot conclude its determination was erroneous.

Upon filing its motion for summary judgment, the Board submitted the affidavit of Board members Bruce Osborn and William Vanderveen which stated:

"1. They are the duly elected and qualified members of the Tippecanoe County Board of Commissioners. In said capacity, they are the legal custodians of the ordinances ordained and enacted by the Board of Commissioners of the County of Tippecanoe.

2. Your affiants further depose and say that Ordinance No. 76–19 and Ordinance No. 81–10, which are attached hereto and made a part of this Affidavit, were duly enacted by the Board of Commissioners of the County of Tippecanoe on the dates therein indicated and that at all times subsequent to said dates, said ordinances have been in full force and effect.

3. Your affiants further depose and say that said attachments are true and authentic copies of the ordinances as enacted by the Board of Commissioners of the County of Tippecanoe, State of Indiana."

Record at 166.

In opposition to the Board's affidavit, TSL filed the affidavit of Gerald Schlossberg. Therein, Schlossberg states he was neither aware of the existence of ordinance 76–19 nor of any hearings held prior to the enactment of either ordinance. Record at 241.

We have previously held that the testimony of an officer in charge of public records is sufficient to warrant their admission into evidence. *Woods v. Brown County Plan Commission,* (1983) Ind.App., 446 N.E.2d 973, 977, *trans. denied.* This was accomplished by the Board upon its filing of the affidavit with the ordinances. The self-serving statements of Schlossberg in no way contradict the Board's contentions and thus permits the presumption the ordinances were validly enacted.[11] Accordingly, there being no evidence to the contrary, the trial court properly determined as a matter of law that the ordinances were properly enacted.

*Issue Two*

TSL next contends the adoption of the Refuse Disposal Act served to pre-empt the provisions of Indiana Code section 17–2–22–4, thereby rendering ordinances 76–19 and 81–10 invalid. We disagree.

The ordinances in question were indeed enacted pursuant to Indiana Code section 17–2–22–4. That section stated at the time of the enactment of ordinance 76–19 as follows:

"For the protection of public health, the board of commissioners of any county, in addition to its other powers, shall have the power and authority to adopt and enact ordinances regulating the public disposal of garbage and rubbish on any land which is situated outside the corporate limits of any city or town. Such ordinances shall provide that any person, firm or corporation who shall violate any provision of the ordinance shall be guilty of a misdemeanor, and, on conviction, the violator shall be punished for the first offense by a fine of not more than five hundred dollars [$500]; for the second offense by a fine of not more than one thousand dollars [$1,000]; and for the third and each subsequent offense by a fine of not more than one thousand dollars [$1,000] to which may be added im-

prisonment for any determinate period not exceeding ninety [90] days, and each day after the expiration of the time limit for abating insanitary conditions and competing improvements to abate such conditions as ordered by the county board of health, or by the duly appointed health officer of the county, shall constitute a distinct and separate offense."

Ind.Code § 17–2–22–4 (1974).

The statute was then amended in 1978 and contained the following language at the time ordinance 81–10 was enacted: "The board of commissioners of any county, in addition to its other powers, may adopt ordinances regulating the public disposal of garbage and rubbish on any land which is situated outside the corporate limits of any city or town." Ind.Code § 17–2–22–4 (1980 Supp.).

In 1965 our legislature promulgated the Refuse Disposal Act. Ind.Code §§ 19–2–1–1 through 32 (1974). The stated purpose of the Act was to "authorize counties, cities and towns to establish, acquire, construct, install, operate and maintain certain facilities for the collection and disposal of refuse and to declare open dumps to be inimical to human health." Ind.Code § 19–2–1–1 (1974). The Act further provided that:

"Every such county, city and town in the state of Indiana is hereby authorized and empowered to establish, acquire, construct, install, operate and maintain facilities for the collection and disposal of refuse, to secure the collection and disposal of refuse accumulated within or without the corporate limits of such county, city or town . . . Approval shall be obtained from the state board for any method or methods used for the disposal of refuse prior to obtaining land or facilities . . ."

Ind.Code § 19–2–1–3 (1974).

However, while the state board of health was vested with authority to "adopt reasonable regulations to carry out the provisions

---

11. We note ordinances are also entitled to a statutory presumption of validity upon introduction of a certified copy. Indiana Code section 36–2–4–9 (1981 Repl.); *see also Spurling v.*

*Area Plan Commission of Evansville,* (1978) 178 Ind.App. 41, 44–45, 381 N.E.2d 507, 509–10, *trans. denied* (1979).

of [the] act," Indiana Code section 19–2–1–32 (1974), the Act further provided that:

"Action taken by the state board pursuant to the provisions of this act [19–2–1–1—19–2–1–32] shall not limit the powers of other units of government to make or enforce other laws, ordinances or regulations for the storage, collection, removal or disposal of refuse, if the laws, ordinances, or regulations do not conflict with the provisions of this act and to this effect the provisions of this act shall be construed as cumulative or alternative."

Indiana Code section 19–2–1–30 (1974). Hence, by its own language, the Refuse Disposal cannot be viewed as having pre-empted the authority of counties to adopt ordinances as granted in Indiana Code section 17–2–22–4. Rather, as the Act expressly states, its provisions "shall be construed as cumulative or alternative." Ind. Code § 19–2–1–30 (1974). We therefore find no pre-emption of Indiana Code section 17–2–22–4.

*Issue Three*

The next argument advanced by TSL concerns the degree of authority conferred upon the Board of Commissioners by Indiana Code section 17–2–22–4. Specifically, TSL contends ordinance 81–10 exceeds the authority of the statute by way of the following language:

"SECTION 208A. Any person holding an unrevoked permit for a disposal site located in Tippecanoe County, Indiana, shall accept and process all Garbage, Rubbish and Refuse presented to it for disposal by any person during normal business hours upon tender of payment of the maximum rates then established for such disposal site."

Record at 33.

In support of its argument TSL directs us to Indiana Code section 17–2–2.5–3 (1980 Supp.), which at the time of the enactment of ordinance 81–10 stated, *inter alia,* "[a] county may not exercise the following powers: (1) The power to enact laws governing private or civil relationships . . ." Ind.Code § 17–2–2.5–3 (1980 Supp.). According to TSL, ordinance 81–10 goes beyond mere

"regulation" and contravenes the aforementioned language by conferring a benefit on refuse haulers in Tippecanoe County at its expense. Moreover, the broad language of the ordinance could conceivably require it to accept refuse from haulers outside of Tippecanoe County; clearly, in the view of TSL, in contravention of the authority intended by Indiana Code section 17–2–22–4.

We concede the objectionable language employed in the ordinance is broad and perhaps could lead to the interpretation suggested by TSL if viewed in isolation. However, the same rules of construction applicable to statutes are also applicable to ordinances, and require them to be read as a whole. *Woods v. Brown County Plan Commission,* (1983) Ind.App., 446 N.E.2d 973, 976, *trans. denied; Clipp v. Weaver,* (1983) Ind., 451 N.E.2d 1092, 1094. By so doing, we are convinced the ordinance reveals its concern is with the disposal of waste generated in Tippecanoe County. In pertinent part, the ordinance declares:

"WHEREAS, the Statutes of the State of Indiana grant to the Board of Commissioners the power to regulate the furnishing of services for the collecting, processing and disposing of solid wastes *in the county,* including the power to fix the price to be charged for that service; and

. . .

WHEREAS, on June 1, 1971, the Board of Commissioners entered into a contract with Tippecanoe Sanitary Landfill, Inc., for the operation of a sanitary landfill *in Tippecanoe County* for a period of ten years, which contract as amended during the term expired on May 31, 1981; and

. . .

WHEREAS, it is necessary that the user rates charged at such sanitary landfill be reasonable and affordable so that solid waste is placed therein in order to protect the public health and safety of *the residents of Tippecanoe County . . .*"

Record at 30 (emphasis supplied). Although the drafters could have been more precise in stating their concerns, we do not believe that taken as a whole, the ordinance

is susceptible to the interpretation suggested by TSL.

■ Furthermore, we do not agree with TSL in its assertion that the ordinance places an undue burden upon it by requiring it to accept, upon tendering of the maximum rate, all refuse delivered to its landfill. As an owner of property devoted to a use in which the public has an interest, TSL must submit to reasonable controls for the public good. *Western Union Telegraph Co. v. State,* (1905) 165 Ind. 492, 500, 76 N.E. 100, 103. The provisions of the ordinance required no more.

*Issues Four and Five*

Addressing these issues jointly, we construe the argument advanced by TSL as a two-fold challenge to the Board's establishment of the rates. First, TSL asserts, the Board's authority to regulate, as found in Indiana Code section 17–2–22–4, does not confer the power to establish rates. Secondly, assuming, *arguendo,* the statute does confer such power, TSL argues the standards by which the rates are established are unreasonable.

The essence of TSL's argument is that the word "regulate," as it is employed in the statute, merely confers the power to license, inspect, or prohibit certain activity. This limited power, according to TSL, does not include the authority to control the revenues of a privately owned landfill operator. Instead, TSL submits that if such a prerogative were intended, it should have been expressly granted by the statute.

In response to this challenge, the Board alleges such express statutory authority does exist in Indiana Code section 36–9–2–16 (1981 Repl.). This provision states: "A unit may regulate the furnishing of the service of collecting, processing, and disposing of waste substances and domestic or sanitary sewage. This includes the power to fix the price charged for the service." *Id.*

The Board's reliance on this statute, however, is misplaced in two respects. Initially, we note that the statute was not even in effect at the time ordinance 81–10 was enacted on June 1, 1981.[12] But more importantly, the statute is not concerned with the disposal of solid waste, but rather, with the disposal of sewage. True, the statute refers to "waste substances," but it does so in the context of sewage disposal. Furthermore, as we have previously discussed, the issue of solid waste disposal is addressed in what was formerly denominated as the Waste Disposal Act. Ind.Code §§ 19–2–1–1 through 32 (1974) now codified at Ind. Code §§ 36–9–30–1 through 35 (1981 Repl.). Thus, if the Board had *express* statutory authority to establish rates, it must be derived from those provisions, not Indiana Code section 36–9–2–16.

Examining the Waste Disposal Act, the only express grant of authority to engage in rate making is found in Indiana Code section 19–2–1–16. It provided, *inter alia,*

"The county council, common council of every city or town board now or hereafter owning, operating and maintaining facilities for the collection or disposal of refuse shall have power, by ordinance, to establish and maintain just and equitable rates or charges for the use of and the service rendered by such facilities...."

*Id.* This authority, however, is expressly limited to the "county council, [or] common council of every city or town board," *id.;* it does not extend to a county board of commissioners. Hence, we must conclude the Board had no express statutory authority for its actions. If it indeed had such authority, it must have been derived from the Board's general police powers.

As the owner of the only sanitary landfill serving the residents of Tippecanoe County, TSL is essentially the operator of property devoted to a public use. It is therefore subject to some degree of control for the benefit of the public. *Western Union Telegraph Co. v. State,* (1905) 165 Ind. 492, 500, 76 N.E. 100, 103. This control, commonly referred to as police power, is to be exercised on behalf of the public for its general health and welfare. *Spitler v. Town of*

---

**12.** Indiana Code section 36–9–2–16 (1981 Repl.), became effective on September 1, 1981.

*Munster,* (1938) 214 Ind. 75, 77, 14 N.E.2d 579, 580. This authority "necessarily implies the power to require the citizen to so use his property as not to defeat such regulations and render them ineffective." *Id.*

Moreover, it is "beyond question that the powers and duties devolving upon municipalities pursuant to the appropriate statutes provide for the exercise of the police powers necessary for the development, operation and continued functioning of the municipality." *Miller v. City of Evansville,* (1966) 247 Ind. 563, 566, 219 N.E.2d 900, 902.

 Finally, provided the challenged ordinance addresses a subject matter affecting the public welfare, this court will not question the legislative purpose for its enactment. *City of Indianapolis v. Ryan,* (1937) 212 Ind. 447, 450, 7 N.E.2d 974, 975–76. Instead, to determine whether an ordinance constitutes a valid exercise of the police power, we engage in a two-step analysis. *City of Indianapolis v. Clint's Wrecker Service, Inc.,* (1982) Ind.App., 440 N.E.2d 737, 742. Our first inquiry concerns whether the ordinance in question tends to promote the health, peace, morals, education, and welfare of the community. If an affirmative determination is made, the wisdom, necessity, and policy of the ordinance is solely within the purview of the legislative body. *Id.* The second inquiry is whether the ordinance bears a reasonable relation to the accomplishment of the stated purpose. *Id.*

Applying the first step of the analysis, we believe ordinance 81–10 does tend to promote the general welfare of the residents of Tippecanoe and that the Board's police power to regulate TSL, as conferred by Indiana Code section 17–2–22–4, includes the authority to establish rates.

The case most directly analogous to the one now before us is *Walker v. Jameson,* (1894) 140 Ind. 591, 37 N.E. 402. Therein, the city of Indianapolis contracted with a private individual for the exclusive right to collect all the garbage generated by city residents. The contract was subsequently assigned, with the city's consent, to Jameson.

In order to implement the contract, the city enacted, pursuant to statutory authority, an ordinance governing garbage collection in the city.[13] In addition to these provisions, the contract provided that city residents availing themselves of Jameson's services would pay .249 cents per pound of garbage collected.

When another individual began collecting garbage from city residents, Jameson sought and was granted injunctive relief against the competitor thereby enforcing his exclusive rights under the contract. On appeal, the competitor challenged both the validity of the contract and the city's statutory authority for the enactment of the accompanying ordinance.

Upholding the injunction, our supreme court described the nature and extent of the city's police powers in these terms: "It is within the general power of a government to preserve and promote the public welfare *even at the expense of private rights.*" *Id.* at 596, 37 N.E. at 404 (emphasis supplied). This power, the court held, was sufficient to sustain the city's right to establish the fee. "No householder is required to have garbage removed or pay for its removal. . . . This ordinance and contract simply provide that if he does produce garbage which has to be carted through the streets, the city or its agent, the contractor, shall do the work at his expense." *Id.* at 595, 37 N.E. at 403. The court concluded, moreover, the fact that the city did not have *express* statutory authority to fix the price was of no consequence. Provided the police power was being exercised to promote the public welfare, it could be sustained "even at the expense of private rights." *Id.* at 596, 37 N.E. at 404.

Finally, the court stated:

"[W]e are of the opinion that the contract and ordinance assailed are both within the long settled and clearly recognized lines of police power . . . The provision

---

**13.** Acts 1881, § 23 merely granted the city authority to engage in the collection of garbage. It did not specifically provide for the authority to establish fees.

for the removal of the garbage at the expense of the propertyholder is an extreme exercise of this power, but is an incident to its existence.

It is a familiar rule that if the power is conferred upon a municipal corporation by the laws of the State, and the law is silent as to the mode of doing such act, *the corporate authorities are necessarily clothed with a reasonable discretion to determine the manner in which such act shall be done; all the reasonable methods of executing such power are inferred."* *Id.* at 602, 37 N.E. at 405–06 (emphasis supplied); *Accord City of Indianapolis v. Sablica,* (1976) 264 Ind. 271, 342 N.E.2d 853 (where ordinance seeks to supplement burdens imposed by statute there is no conflict between the two, provided the additional burdens are logically consistent with the statutory purpose).

Thus, in *Walker,* the city's power to regulate by fixing the price paid by its residents for the collection of garbage essentially ensured that the general welfare of the public would be served by making the task sufficiently profitable so as to provide Jameson with an incentive to perform the necessary service. Likewise, in the present case, we believe the Board's power to regulate TSL by establishing the rate it may charge for its services tends to promote the public welfare by ensuring its landfill operations are affordable for the residents of Tippecanoe County. In short, we believe that if a municipality has the power to regulate the collection of garbage so as to make it sufficiently profitable, *Walker,* it must also possess the power to regulate the disposal of garbage to ensure it is affordable. If this corresponding power did not exist and the Board were not permitted to establish reasonable rates, it is manifestly clear it would be to the detriment of the public.

Accordingly, we find that the Board's authority to regulate the disposal of garbage, as that term is utilized in Indiana Code section 17–2–22–4, necessarily includes the power to establish rates.

Having determined the Board has the authority to set rates, the remaining question is whether rates it established and the standards utilized in so doing are reasonable and bear a substantial relation to accomplishing the stated purpose of ordinance 81–10. *Clint's Wrecker Service,* 440 N.E.2d at 742. In this regard, TSL argues the standards enumerated in the ordinance, specifically the Construction Cost Index, are unreasonable insofar as they bear no relation to the actual costs of its operations.

Addressing this issue, the trial court expressly found: "The establishment of user rates under ordinance No. 81–10, is a reasonable regulation of sanitary landfills in Tippecanoe County, Indiana, *and provides reasonable standards for the establishment of such rates."* Record at 129 (emphasis supplied).

The trial court's finding that the standards were reasonable, however, necessarily included a determination of a question of fact. *State v. Wayne Township, Marion County,* (1981) Ind.App., 418 N.E.2d 234, 244–45; *Accord Consolidated City of Indianapolis v. Cutshaw,* (1983) Ind.App., 443 N.E.2d 853, 857, *trans. denied* (whether activity in massage parlor constituted conduct protected by the First Amendment presents a genuine issue of material fact precluding summary judgment). Consequently, the granting of summary judgment as to this issue was inappropriate. *Osborne v. State,* (1982) Ind.App., 439 N.E.2d 677, 684. We therefore reverse the trial court as to this issue and remand for a trial limited thereto.

Because of the decision we have reached, we find it unnecessary to address the remaining issue raised by TSL concerning its due process rights.

Affirmed in part, reversed in part, and remanded. Costs to be divided equally.

ROBERTSON, P.J., and NEAL, J., concur.