Norman L. WOLFE, et al., Appellants (Defendants Below),

v.

TUTHILL CORPORATION, FILL–RITE DIVISION, Appellee (Plaintiff Below).

No. 57A03–8606–CV–171.

Court of Appeals of Indiana, Third District.

Dec. 17, 1987.
Rehearing Denied Jan. 20, 1988.

Dean S. Eveland, Lundy and Walker, Fort Wayne, for appellants.

Edward L. Murphy, Jr., Edward J. Liptak, Livingston Dildine Haynie & Yoder, Fort Wayne, for appellee.

STATON, Judge.

This case involves an alleged misappropriation of trade secrets by Norman L. Wolfe (Wolfe), a former employee of the Tuthill Corporation (Tuthill). A division of Tuthill makes pumps, and while Wolfe worked as its purchasing agent, he started a competing business. In 1980, a preliminary injunction was issued prohibiting Wolfe from using Tuthill's trade secrets. This injunction was confirmed in 1981, and in 1983, Wolfe was found in contempt for violating it. Tuthill then moved to make the injunction permanent and both sides moved for summary judgment. Tuthill's requests for summary judgment and a permanent injunction were granted and Wolfe appealed.

In the meantime, however, Wolfe moved the trial court to dismiss or modify the injunction. The appellate process was stayed pending the trial court's decision. The trial court ultimately denied Wolfe's motion, so we now consider the following issues:

1. Whether the trial court improperly considered prior interlocutory findings of fact when it granted Tuthill's motion for summary judgment;

2. Was the decision to grant a permanent injunction contrary to law as set down in the Uniform Trade Secrets Act; and

3. Is the permanent injunction vague, over broad or ambiguous.

Reversed and remanded.

## I.

### Summary Judgment

Appellate courts have long ago established that summary judgment is appropriate only when no issue of material fact is in dispute and the moving party is entitled to a judgment as a matter of law. *Tippecanoe Sanitary Landfill Inc. v. Board of County Commissioners* (1983), Ind.App., 455 N.E.2d 971, 974, *trans. den.* In determining the propriety of a summary judgment, all facts established by the non-moving party must be taken as true, and any doubts should be resolved against the proponent of the motion. *Ingram v. Hook's Drugs, Inc.* (1985), Ind.App., 476 N.E.2d 881, 883, *trans. den.*

Wolfe contends that summary judgment was inappropriate in the instant case because the trial court relied on prior findings of fact. He correctly points out that when presented with a motion for summary judgment, a trial court must determine if an issue of genuine material fact exists, even

if prior findings of fact have been made. *See Martin v. Indiana–Bell Telephone Co., Inc.* (1981), Ind.App., 415 N.E.2d 759, 761, *reh. den.* (prior adjudication must have been a final judgment for *res judicata* purposes); *Howard Johnson Co. v. Parkside Development Corp.* (1976), 169 Ind. App. 379, 383, 348 N.E.2d 656, 659 (unappealed preliminary injunction did not become law of the case).

 Although the trial court is not bound by findings of fact entered when a preliminary injunction was issued, under Indiana Rules of Procedure, Trial Rule 65(A)(2), the trial court may consider at the trial on the merits all of the admissible evidence presented at preliminary hearings. *Cement–Masonry Workers Union, Local 101 v. Ralph M. Williams Enterprises* (1976), 169 Ind.App. 647, 649, 350 N.E.2d 656, 657. Consequently, in cases where no new facts are presented, a request for a permanent injunction may be granted in a summary judgment proceeding. *E.g., United States v. Byrd* (7th Cir.1979), 609 F.2d 1204, *reh. den.* As a matter of law, then, the trial court did not err merely by considering the evidence at prior hearings.

## II.

### *Uniform Trade Secrets Act*

In *Davis v. Eagle Products, Inc.* (1986), Ind.App., 501 N.E.2d 1099, 1102, *trans. den.*, this court held that an employee who used confidential information belonging to his employer to establish a rival enterprise breached a fiduciary duty. In that case, the employer was awarded damages. In the instant case, the trial court found that while still an employee of Tuthill, Wolfe copied his employer's blueprints to make a competing product. The main difference between this case and *Davis* is that here the remedy sought is a permanent injunction rather than monetary damages.

Wolfe does not contend that he did not copy parts of Tuthill's design, rather he argues that a permanent injunction is inappropriate as a matter of law because Tuthill's pump design was not a trade secret or confidential information. He reasons that

since it was possible in the time since the preliminary injunction was created to discover Tuthills' design by reverse engineering, that design is no longer a trade secret and worthy of protection. *S.I. Handling Systems, Inc., v. Heisley* (3rd Cir.1985), 753 F.2d 1244, 1262 (reverse engineering may not be wrongful).

As authority for his position, Wolfe refers us to the Uniform Trade Secrets Act (Act) codified at West's AIC 24–2–3–3 (Supp.1987). That section provides that unless exceptional circumstances are present, injunctions to protect trade secrets shall not extend past the time that the trade secret ceases to exist. Injunctions may continue, however, for a reasonable time to eliminate any commercial advantage gained from a misappropriation.

Tuthill's response to Wolfe's attack is a claim that the Act does not apply to misappropriations beginning prior to September 1, 1982. It points out that Wolfe's misappropriations began in 1979 while he was still employed by Tuthill. That is only partially correct as demonstrated by the following statute:

> If a continuing misappropriation otherwise covered by this chapter began before September 1, 1982, the chapter does not apply to the part of the misappropriation that occurred before that date. It does apply to the part that occurs after August 31, 1982, unless the appropriation was not a misappropriation under the law displaced by this chapter.

West's AIC 24–2–3–8 (Supp.1987).

 While the express language of the Act makes it clear that it does not apply to Wolfe's misappropriation that began prior to September 1, 1982, Wolfe's misappropriation of Tuthill's trade secrets continued after that date. Consequently, Wolfe's actions after August 31, 1982 were subject to the provisions of the Act. The exception, inartfully drafted and contained in the second sentence of this section, applies only if Wolfe's appropriation was not a misappropriation under the law displaced by the Act. Copying Tuthill's blueprints constituted a misappropriation under the prior law, so the Act applies.

■ Tuthill's second counterargument is that Wolfe's failure to raise the issue of the Act's applicability to this case waived the issue for appellate purposes. While it is true that issues raised for the first time on appeal are waived, *Baker v. Champion Motor Home Co., Inc.* (1987), Ind.App., 505 N.E.2d 144, 147, *reh. den.*, Wolfe challenged the trial court's jurisdiction to issue a permanent injunction. Because this is a challenge to the trial court's subject matter jurisdiction, which can be raised at any time, the issue has not been waived. *Hancock County Rural Electric Membership Corp. v. City of Greenfield* (1986), Ind. App., 494 N.E.2d 1294, 1295, *trans. den.*

■ "Jurisdiction" is the legal power to entertain any matter or proceeding and to act therein. This power to act must be derived from the Constitution or some statute. *Farely v. Farely* (1973), 157 Ind.App. 385, 396, 300 N.E.2d 375, 382, *trans. den.* There is no question that the trial court in this case was a court of general jurisdiction with the power to issue injunctions, but Wolfe has argued that under the Act, the trial court had no authority to issue a permanent injunction. In particular, Wolfe claimed that the trial court exceeded its statutory authority because it did not determine the time when the injunction should end.

Under the Act, a trial court may order affirmative acts to protect a trade secret. IC 24–2–3–3(c). A permanent injunction would be included in this broad grant of power, but the Act makes it clear that such affirmative acts can only be employed in appropriate circumstances. *Id.*

■ In the instant case, the trial court made written findings of fact and conclusions of law. It did not, however, include among those findings an identification of the appropriate circumstances to justify a permanent injunction. Too, if the appropriate circumstances are not present, the trial court did not find how long Tuthill's trade secrets would continue to exist, or what would be a reasonable time to eliminate any commercial advantage gained by Wolfe's misappropriation.

■ In construing a statute, the foremost concern is to determine and give effect to the true intent of the legislature. *Johnson v. LaPorte Bank & Trust Co.* (1984), Ind.App., 470 N.E.2d 350, 354, *trans. den.* Given the plain meaning of the words in the Act, it is clear that the legislature intended the extreme remedy of a permanent injunction to issue only in exceptional circumstances. Whether these circumstances are present is a question for the trier of fact. The other remedies specified in the Act, *e.g.*, temporary injunctions, payment of damages and royalties, are designed to apply in most cases. Too, the express language limiting the length of time injunctive relief should last further reveals the legislature's intent. While the public policy behind the Act is to protect trade secrets, *Kozuch v. CRA–MAR Video Center, Inc.* (1985), Ind.App., 478 N.E.2d 110, 114, *trans. den.*, it is also clear that its protection is not to be used to prevent competition beyond the time that trade secrets can be discovered by legitimate means.

Consequently, this case must be remanded to the trial court to resolve the factual question regarding the length of time Tuthill is entitled to injunctive relief.

Given our treatment of the previous issue, we need not address whether or not the permanent injunction was vague or overbroad.

Reversed and remanded.

ROBERTSON, J., concurs.

GARRARD, P.J., dissents with opinion.

GARRARD, Presiding Judge, dissenting.

I concur with the majority up to the point it commences consideration of the court's power to enter injunctive relief under the Trade Secrets Act, IC 24–2–3–1 et seq., and application of the Act to the injunction entered by the trial court.

In order to appreciate the statutory scheme it is helpful to recall briefly the scene at common law. Trade secrets have traditionally been protected and injunctive relief has been both popular and effective

as a remedy. (No doubt this was due in part to uncertainty as to a proper measure of damages; an uncertainty removed in large part by the Act.)

Nevertheless, and oftentimes dependent upon the particular facts at hand, courts were wont to disagree as to whether the essence of the offense was the taking of a property right or the breach of trust involved in violating a confidential relationship. *See, e.g.,* Mr. Justice Holmes' opinion for the Court in *E.I. Dupont de Nemours Powder Co. v. Masland* (1917), 244 U.S. 100, 37 S.Ct. 575, 61 L.Ed. 1016.

Seeking to clarify, consolidate and make uniform the law in this area, the Act supplies a definition for protectable trade secrets and for misappropriation. It provides for injunctive relief, for monetary damages in addition to or in lieu of an injunction, and for exemplary damages where there is a willful and malicious misappropriation. The Act also provides for attorney fees.

The provision covering injunctions appears at IC 24–2–3–3. Subsection (a) states:

> "Actual or threatened misappropriation may be enjoined. Upon application to the court, an injunction shall be terminated when the trade secret has ceased to exist, but the injunction may be continued for an additional reasonable period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation."

Commentators on the Act appear to agree that it is the intent of the Act to eliminate the perpetual injunction as an available remedy. *See, e.g.,* Lyden, *The Deterrent Effect of the Uniform Trade Secrets Act,* 69 J. Pat. & T. Off. Soc'y. 427 (Aug. 1987); Keitzke, *The Uniform Trade Secrets Act,* 64 Marq.L.Rev. 277 (1980).

The Act does not, however, employ that term nor does it speak expressly in terms of preliminary or temporary injunctions. It simply states that the injunction shall be terminated when the trade secret has ceased to exist.[1] On the other hand, our Trial Rule 65 relating to injunctions addresses temporary restraining orders and preliminary injunctions and our decisions continue to refer to temporary injunctions and permanent injunctions.

In modern practice the term "temporary restraining order" has clearly come to denote a restraining order issued without notice pursuant to TR 65(B) as distinguished from a temporary or preliminary injunction issued with notice and after hearing. ("Temporary" and "preliminary" are used interchangeably in referring to an injunction issued pursuant to TR 65(A).

An ambiguity arises, however, when we speak of permanent injunctions. "Permanent" may be taken in the sense of "perpetual" for this is often its effect.[2] It may also be taken simply to refer to the final injunction ordered after the trial on the merits, as distinguished from a temporary injunction issued after only preliminary proofs to maintain status quo.

The Uniform Trade Secrets Act does not purport to address these procedural distinctions. It leaves them to normal state practice. In my view it is a misapplication of the Act to equate its limitation on the permissible duration of the injunction with the finality of the order. (In other instances of permanent injunctions it has long been recognized that the court retains jurisdiction to modify or revoke the injunction as changed circumstances may dictate. 42 Am.Jur.2d, *Injunctions* Sec. 324, pp. 324–25.) Thus, even the fact that the terms of the injunction describe it as permanent is not critical. The point is that the party enjoined is entitled to relief (subject to the reasonable period extension) once the trade secret has ceased to exist.

This analysis requires consideration of two more questions not specifically addressed by the Act. When has a trade secret ceased to exist and, procedurally, who bears the burden of proof?

---

1. Except that it may be continued for a reasonable period to eliminate unfair advantage.

2. That the majority opinion equates the terms can be seen from its reliance on subsection (c) of IC 24–2–3–3 and the distinction it is careful to draw between temporary injunctions as a favored form of relief under the Act and permanent injunctions, which it considers an extreme remedy.

The language of Section 3(a) clearly supports the interpretation that the enjoined party is not entitled to relief until the trade secret has actually ceased to exist as a matter of fact. On the other hand, the definition of "trade secret" contained in IC 24-2-3-2 posits that the information, etc., in order to qualify as a trade secret, is not "readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use." To this extent then the plaintiff must establish the definitional requirement to be entitled to relief and he bears the burden of doing so. Once he has made a prima facie case that a trade secret exists, the burden of going forward with evidence that the secret is readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use shifts to the defendant who then bears the risk of nonpersuasion.

Once this has been done and relief granted, the burden rests upon the enjoined party to establish that the trade secret has, in fact, ceased to exist. Ordinarily this will require proof that some other entity has discovered the information, etc. by legitimate means and has put it to competitive use. At that juncture an assertion of mere discoverability will be unavailing on principles of res judicata.

In the case before us there was ample evidence of a trade secret. Moreover, the evidence disclosed that reverse engineering would not disclose the dimensional tolerances developed by Tuthill. I disagree with the majority determination that the injunction must be expressly limited as to its duration at the time it is entered and the implication that the owner of a trade secret seeking injunctive relief as a part of his case must establish when the trade secret status of his information, etc. will likely expire. It is enough under the Act that the enjoined party may seek relief at that time.

Moreover, I do not find the injunction to have been too vague or overbroad.

I would therefore affirm the trial court.

