William D. **LAIRD, Gary T. Casper, Control Flow, Inc., I.K. Production Company, and Laird Exploration Company, Appellants–Defendants,**

v.

**AMOCO PRODUCTION COMPANY, Appellee–Plaintiff.**

No. 25A05–9204–CV–00099.

Court of Appeals of Indiana, Fifth District.

Dec. 23, 1992.

G. Morris Hamm, Schindler & Hamm, P.C., Houston, Tex., Ted A. Waggoner, Peterson & Waggoner, Rochester, for appellants-defendants.

Franklin A. Morse, II, David R. Melton, Paul B. Hunt, Barnes & Thornburg, South Bend, Melvin L. Hawkins, Amoco Production Co., Houston, Tex., for appellee-plaintiff.

RUCKER, Judge.

Plaintiff–Appellee Amoco Production Company ("Amoco") obtained information concerning the location of potential oil production sites in Indiana by employing a third party to conduct an exploratory sur-

vey. An Amoco employee later drew a map showing the geographic location of the sites and made the map available to Appellants–Defendants William D. Laird, Gary T. Casper, Control Flow, Inc., I.K. Production Company, and Laird Exploration Company (collectively referred to as "Laird Exploration"). Laird Exploration used the geographic information to develop oil leases and Amoco sought injunctive relief on the theory that the geographic information constituted a trade secret pursuant to Ind. Code § 24–2–3–1, *et seq.* Laird Exploration appeals the trial court's entry of a preliminary injunction, presenting but one issue for our review: whether the trial court erred in concluding that the disclosed geographic information constitutes a trade secret.

We reverse and remand.

Amoco is in the business of developing new sources of oil. A study group of geologists at Amoco was interested in an area which included southern Michigan, northeastern Indiana, and northwestern Ohio because of the known geological fault lines in that area. Such fault lines are known to be favorable for the location of oil in quantities sufficient to warrant development. The Amoco geologists recommended conducting a microwave radar[1] study of the area.

On the recommendation of John Clendening, an Amoco geologist and a specialist in microwave radar, Amoco contracted with Airborne Petroleum, Inc. (Airborne) to carry out the microwave radar study. Airborne conducted the study from August 13, 1990 to September 19, 1991, at a cost to Amoco of $150,000.00. The information developed by Airborne was forwarded by Amoco to QC Data, Inc. QC Data converted the information into digitized maps. Amoco made efforts to keep the study information confidential by means of internal security measures and contractual arrangements with Airborne and QC Data.

The Amoco geologists evaluated the maps produced by QC Data and determined there was a likelihood of pools of oil in producible quantities in two large areas in Fulton, Marshall, and Kosciusko Counties, Indiana. Further particularized study of the two oil pools would be necessary in order to develop precise drilling locations from the QC Data maps. After an internal disagreement, the study group recommended that the Indiana oil fields not be developed at that time because their production potential was not large enough.

Clendening was disgruntled with what he perceived to be Amoco's continuing lack of interest in capitalizing on microwave radar information. Sure that Amoco was once again about to ignore the results of microwave radar technology, Clendening resolved to prove the value of the technology by giving William Laird, an oil wildcatter from Texas, the opportunity to develop the information. On November 9, 1991, Clendening sent Laird a Rand McNally road map on which he had drawn circles indicating the location of the two Indiana oil fields.

Laird Exploration quickly set about to develop the information released to Laird. A dowser[2] was hired to determine the edges of the oil pools indicated on the Clendening map. Laird Exploration thereupon began acquiring oil and gas exploration leases on November 20, 1991. Laird Exploration managed to obtain leases on a sizable portion of the area disclosed on the Clendening map before the present proceedings halted further acquisition.

Even as Laird Exploration was acquiring oil leases in Indiana, upper management at Amoco overruled their geologists and, much to the shock of Clendening, resolved to develop the Indiana sites. Clendening contacted Laird and unsuccessfully attempted to have Laird Exploration cease its leasing efforts. On December 3, 1991, a

---

**1.** Microwave radar is an airborne process permitting the detection of micro-emissions emitted from the ground when hydro-carbons are located in large volume underneath the ground.

**2.** A dowser is an individual who purports to have the ability to find underground substances with the use of divining rods.

representative of Amoco was sent to Indiana to begin leasing operations and soon discovered the existence of the Laird Exploration leases. Clendening later confessed to the unauthorized disclosure of information.

On January 24, 1992, Amoco brought this action against Laird Exploration for a temporary retraining order, a preliminary injunction, a permanent injunction, damages and attorney's fees. In its verified complaint Amoco alleged the information disclosed to Laird is a trade secret pursuant to I.C. § 24–2–3–1 *et seq.* After three days of hearings the trial court granted Amoco's request for a preliminary injunction. The injunction prohibited Laird Exploration from using or disclosing the information in Clendening's map and specifically prohibited Laird Exploration from pursuing or developing oil and gas leases in the areas indicated on the map. The injunction also enjoined Laird Exploration from using or disclosing any other information gained in the discovery or litigation of this case. Pursuant to Ind.Trial Rules 65(D) and 52(A), the trial court later issued findings of fact and conclusions of law.

This interlocutory appeal ensued in due course. Additional facts will be recited where relevant.

Laird Exploration asserts the trial court committed reversible error in finding that the information concerning the geographic location of the oil field sites was a trade secret protected under the Uniform Trade Secrets Act, I.C. § 24–2–3–1 *et seq.* Laird Exploration argues this information was discoverable by reasonable means and therefore could not be a trade secret as a matter of law, citing *Xpert Automation Systems Corp. v. Vibromatic Co., Inc.* (1991) Ind.App., 569 N.E.2d 351. We agree that *Xpert* is controlling on this issue.

■ The decision whether to issue a preliminary injunction is committed to the sound discretion of the trial court, and this court will not reverse unless the trial court abused that discretion. *Harvest Ins. Agen-cy, Inc. v. Inter–Ocean Ins. Co.* (1986), Ind., 492 N.E.2d 686, 688. In determining whether an abuse of discretion exists in the grant of a preliminary injunction, this court must investigate whether the findings of fact and conclusions of law are sufficient to establish that the information at issue is a trade secret pursuant to statute. *See Xpert, supra.*

Indiana Code § 24–2–3–2 provides:

'Trade secret' means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(1) derives independent economic value, actual or potential, from not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

■ We note there is no dispute that the second part of the statutory test was met by Amoco. The evidence and findings support the court's conclusion that Amoco made reasonable efforts to insure the confidentiality of the information at issue. However, our inquiry does not end with the determination that Amoco made every effort to keep secret the results of the microwave radar survey. "All the efforts in the world to preserve confidentiality of information will not suffice if the information is not secret in the first place—if it is 'readily ascertainable' by other proper means." *Fleming Sales Co., Inc. v. Bailey* (N.D.Ill. 1985). 611 F.Supp. 507, 513, quoted in *Xpert,* 569 N.E.2d at 356.

The trial court concluded as follows with regard to whether the survey information was readily available by proper means:

d. That the proprietary information referred to is not readily ascertainable to those interested in the market place in that the methods of accumulating this information were not simple or easy to accomplish, and are expensive to develop. *Record* at 173L.

The court's findings readily support the court's conclusion insofar as it found that

the information concerning the geographic location of the Indiana oil fields would have been both difficult and expensive for Laird Exploration to accomplish without the benefit of Clendening's map. As the court specifically found, the microwave radar survey took Airborne almost a year to complete and the cost to Amoco of the survey alone was $150,000.00. Further, the results of the survey had to be converted to digitized maps by QC Data in order to be evaluated by the Amoco study group.[3] The question before us then is whether the court's finding that the location of the Indiana oil fields would be difficult and costly to develop by independent means suffices to support the trial court's conclusion that the geographic information indicated on Clendening's map is a trade secret.

We recently confronted that same issue in *Xpert, supra.* In that case the plaintiff sought to enjoin former employees from using information generated from plaintiff's customer list as a basis for defendants' customer list in a competing business. Based on a finding that it would be both more difficult and costly for the defendants to generate the same information by other means, the trial court concluded that the plaintiff's customer list was a trade secret and entered a preliminary injunction. Upon a review of recent case law we concluded that "information which is discoverable by reasonable means cannot be a trade secret." *Xpert,* 569 N.E.2d at 355. We reversed the trial court's decision because (1) the information was available to the defendants by other means and (2) the court did not find that it would be economically infeasible for the defendants to so acquire the information.

Similarly, there is a total lack of findings in this case to support the trial court's conclusion that the geographic information disclosed by Clendening was not readily ascertainable by Laird Exploration. As in *Xpert,* there is no finding here that it was

not economically feasible for Laird Exploration to identify the location of the Indiana oil fields by means other than Clendening's map. The court's finding that it would be more difficult and costly for Laird Exploration to obtain the relevant information by alternative means will not suffice; that notion was explicitly rejected in *Xpert.*

Moreover, in both *Xpert* and this case, there is an absence of evidence indicating that the information at issue "could not have been created by any means other than [plaintiff's] business operations." *Kozuch v. CRA–MAR Video Center, Inc.* (1985), Ind.App., 478 N.E.2d 110, 113, *trans. denied.* We also note the trial court made no finding indicating that only the Amoco geologists could make use of the information generated by Airborne and QC Data, even though Amoco proposed such a finding. Further, Amoco did not develop a new technology to generate the locations indicated on Clendening's map, but rather paid for the use of the existing technology. As the court's findings make clear, both the knowledge of the fault lines as a basis for initially guiding the survey and the use of microwave radar as a survey tool were generally known. Thus, as in *Xpert,* the information at issue in this case is readily specifiable in general knowledge terms independent of Amoco's business operations.

Amoco does not dispute that Laird Exploration might have paid for the Airborne and QC Data technological support in the same fashion as did Amoco. Rather, Amoco urges that we ignore that fact because Laird Exploration "stole" Amoco's work product, citing *CPG Products Corp. v. Mego Corp.* (S.D.Ohio 1981) 214 U.S.P.Q. 206, 213, 1981 WL 59413; *Revcor, Inc. v. Fame, Inc.* (1967), 85 Ill.App.2d 350, 228 N.E.2d 742. While Amoco is justifiably concerned by the potential windfall to Laird Exploration, we reject this approach.

■ Unlike the more typical trade secret case involving former employees, Laird Ex-

---

3. The trial court did not make a finding with regard to the cost to Amoco of the maps created by QC Data. We presume that the cost was not insubstantial.

ploration did not commit a breach of trust in acquiring the information disclosed by Clendening. There is no finding that Laird Exploration owed an independent duty to Amoco. Moreover, unlike the situation in the cases cited by Amoco, there is nothing in the record indicating that Laird made any affirmative efforts to obtain the information disclosed on Clendening's map. Amoco's assertion that Laird Exploration stole the geographic information is not substantiated by the record.

■ Further, while it is clear that Laird knew that Clendening was breaching a duty to Amoco in disclosing the information, this fact only suffices to support the court's finding that Laird Exploration "misappropriated" the information pursuant to I.C. § 24-2-3-3(a). Whether or not information is misappropriated is not part of the statutory definition of trade secret. *See* I.C. § 24-2-3-2.

Therefore, we hold that the trial court's findings of fact do not support the conclusion that the geographic information disclosed by Clendening is a trade secret. The court only found that it would be more expensive and difficult for Laird Exploration to generate that information on its own. On the basis of such findings the information indicated on Clendening's map could not have been a trade secret. *Xpert, supra.* We therefore reverse the trial court's order entering the injunction but only insofar as it prohibits Laird Exploration from pursuing or developing leases in the oil fields as indicated on Clendening's map or otherwise using or disclosing the information conveyed by the map.[4] We remand to the trial court with instructions to amend its order in conformance with this opinion.

SHARPNACK, C.J., and BARTEAU, J., concur.

---

**4.** As was the case in *Xpert* our decision today is limited by the trial court's findings based on the record before us. A different record may be developed at trial concerning the application for a permanent injunction.